# United States Court of Appeals
## For the First Circuit

No. 05-2145

UNITED STATES,

Appellee,

v.

BILLY ROY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judges.

Robert C. Andrews for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula
D. Silsby, United States Attorney, was on brief, for appellee.

March 1, 2006

**STAHL**, **Senior Circuit Judge**.  Billy Roy pled guilty in 2001 to possession of child pornography and was sentenced to a term of imprisonment followed by three years of supervised release.  The supervised release was subject to Roy's compliance with various restrictions on his behavior.  After Roy violated some of the conditions, his supervised release was revoked and he returned to prison for four additional months.  When the prison term was complete, Roy was again released subject to conditions of supervision.  This appeal concerns the circumstances that led to the revocation of Roy's second term of supervised release.  It also involves a challenge to one of the conditions set forth in Roy's third scheduled period of supervised release (which he has yet to serve).  Finding that none of Roy's arguments has merit, we affirm.

## I. Background

In January 2001, Roy pled guilty in the United States District Court for the District of Maine to possession of child pornography and, that April, was sentenced to two years in prison, to be followed by three years of supervised release.[1]  The supervised release included several conditions, which required Roy, among other things, to participate in a mental health treatment

---

[1]Roy had been convicted in 1998 of unlawful sexual contact, a misdemeanor.  The victim was a 14-year-old girl who had been babysitting Roy's two nephews.  This conviction itself is not at issue in this case, but Roy's past criminal behavior is relevant to his current mental health treatment and his potential for recidivism, both of which are implicated in this appeal.

program for sex offenders and to refrain from contact with children under age 18 without prior approval of his supervising probation officer. During this term of supervised release, Roy commenced a romantic relationship with Jennifer Woodward, a woman with two minor children, an 11-year-old daughter and a 6-year-old son. He did not tell Woodward about his criminal history; she later learned the information from a friend. Roy concealed the relationship from his mental health program counselor, Scott Efland, and his probation officer, Matthew Brown. In November 2004, a judge determined that Roy had violated the conditions of his supervised release, the release was revoked, and Roy was sentenced to four months in prison.[2] When his prison term was complete, he began a second term of supervised release, this one to last 32 months.

Roy continued his relationship with Woodward, who allowed him to have contact, sometimes unsupervised, with her children. Efland and Brown became concerned that regular exposure to Woodward's two young children, one of whom was close in age to the victim of Roy's first sex offense, was posing a risk to the children's safety as well as inhibiting Roy's rehabilitation.[3]

---

[2]This first revocation is not at issue in this appeal.

[3]Efland, a clinical social worker, testified that one concern in treating sex offenders is that the offender will, consciously or unconsciously, identify children as potential new victims and then build relationships with them. He stated, "[Roy] acknowledged that he was having contact with [Woodward's] children and that he was spending the night at her home. . . . I was concerned if [Woodward] would know how to protect the children, if she was taking the risk

Accordingly, Efland and Brown prohibited Roy from having contact with Woodward or her children and reminded him repeatedly to stay away from the family. Nonetheless, Roy continued to see Woodward and to conceal the relationship from his supervisors.

In February 2005, Brown visited Roy's apartment and spotted a number of empty beer cans, which Roy admitted were the remnants of a night of drinking with Woodward. In March, Brown paid another visit to Roy's apartment and saw a recent photograph of Roy and Woodward together. On April 4, at Brown's request, Roy took a polygraph examination. The examiner asked Roy whether he had had any unsupervised contact with children or any contact at all with Woodward's daughter. Roy admitted having had contact with Woodward's children and that he had, on some occasions, initiated that contact, including by means of sending a cell phone text message to the daughter. Three days after the exam, Roy met with Brown and Efland. The two supervisors expressed their concerns about the progression of Roy's rehabilitation, and Efland told Roy that any further contact with Woodward would preclude him from successfully continuing in treatment.

The following month, early one morning, Brown knocked on Roy's apartment door. When Roy appeared, Brown asked whether anyone else was inside; Roy answered that he was alone. However, Brown heard noises from inside the apartment and found Woodward

seriously enough."

-4-

hiding there. When Efland discovered this deception, he terminated Roy's treatment program, citing Roy's lack of honesty and failure to commit to pursuing rehabilitation.[4] At that point, Roy was no longer compliant with the condition of supervised release requiring him to participate in a mental health treatment program. He had also violated the condition requiring that he be honest with his parole officer. As a result of these violations, the government moved in May 2005 to revoke Roy's supervised release a second time, and after a hearing held in July of that year, the district court revoked Roy's release and returned him to prison once again, this time for eight months. He was also sentenced to a third term of supervised release, to last 24 months, to be served upon his third release from prison. In addition to requiring that Roy participate in counseling and stay away from minor children without permission, the supervised release included the following condition: "Defendant shall have no contact, direct or indirect, with Jennifer Woodward, or her minor children, [names intentionally omitted], without prior approval of the probation officer."

---

[4]Efland testified, "[P]art of the understanding that I have with people working with me in sex offender treatment is that they will not have contact with children under the age of 18 without getting permission from myself and the probation officer. . . . I was concerned whether this was some sort of movement toward sexually abusing these children . . . . [Roy] didn't give me the impression that he understood how important honesty was and how related that is to keeping himself safe. . . . [I terminated the treatment because] I had no reason to believe that he all of a sudden would start being honest."

In this appeal, Roy contends that the district court abused its discretion when, at the July 2005 revocation hearing, the court determined that Roy had violated the conditions of his second period of supervised release. He also argues that the district court improperly considered information that Roy revealed during the April 4 polygraph examination because the examination was administered without <u>Miranda</u> warnings. Finally, Roy challenges the newly imposed condition that he refrain from contact with Woodward on the ground that it violates his First Amendment right of association.

## II. Discussion

This court reviews preserved challenges to conditions of supervised release for abuse of discretion. <u>See</u> <u>United States</u> v. <u>Allen</u>, 312 F.3d 512, 514 (1st Cir. 2002).

We turn first to Roy's argument that the district court erred in concluding, at the July 2005 revocation hearing, that he had violated the terms of his second supervised release period. Roy contends that the real reason his release was revoked was that he had had contact with Jennifer Woodward, and that this was an abuse of discretion because such contact was not prohibited by the supervised release terms then in effect. However, it is more than evident from the record that Roy's violation, as determined by the court, was <u>not</u> that he had contact with Woodward. Rather, as the probation office charged, and the district court found, Roy had

-6-

violated two of the express conditions of his supervised release: Standard Condition Number 3, which required Roy to answer truthfully all inquiries by the probation officer, and Special Condition Number 1, which required him to participate in a mental health treatment program until released by the probation officer. It is true that Roy's relationship with Woodward was one of the subjects about which he lied to his treatment officers, but he was penalized for the lie, not the relationship itself. Efland, the treatment counselor, specifically identified Roy's lack of candor as an impediment to his treatment, pointing out that with sex offenders, "dishonesty is almost always a risk factor" for recidivism. Roy's other violation was the termination of his treatment program, which resulted from his unapproved contact with the children as well as his dishonesty. These were legitimate reasons to conclude that Roy had breached his supervised release terms, and the district court did not err in revoking the release.

There is likewise no merit to Roy's claim that the statements he made during the polygraph exam should have been suppressed because he was not given <u>Miranda</u> warnings before the exam. We recently held that the Fifth Amendment is not implicated when an individual on supervised release is questioned during a polygraph test about past conduct related to his or her release terms, as opposed to a government investigation of unrelated criminal activity:

> [B]ecause revocation proceedings are not
> criminal proceedings, [a person on supervised
> release] will not be entitled to refuse to
> answer questions solely on the ground that his
> replies may lead to revocation of his
> supervised release. . . .[A person on release]
> will have a valid Fifth Amendment claim if his
> probation officers ask, and compel him to
> answer over his assertion of privilege, a
> particular question implicating him in "a
> crime other than that for which he has been
> convicted."

United States v. York, 357 F.3d 14, 24 (1st Cir. 2004) (citations omitted) (quoting Minnesota v. Murphy, 465 U.S. 420, 426 (1984)).

Here, the subject of the polygraph exam was Roy's conduct during his second term of supervised release, including specific questions about his contact with Woodward's children. Roy makes no argument that truthful answers to the government's questions would implicate him in any new and separate crime. Instead, he claims that he should not have been compelled to, in effect, revoke his own release by telling the truth about his unsupervised contact with children under 18. In light of York, this argument is meritless.

Roy's final and most substantial argument is that the provision in his newest supervised release order forbidding him from contact with Woodward without the parole officer's approval violates his First Amendment rights. The federal Sentencing Guidelines allow a district court to impose special conditions on a defendant's supervised release if the conditions are "reasonably related to" any or all of four factors tied to the goals of

supervised release.[5] <u>United States</u> v. <u>Smith</u>, __ F.3d __, __, 2006
U.S. App. Lexis 3019 at *9 (1st Cir. February 8, 2006) (quoting 18
U.S.C. § 3583(d)(1)); <u>York</u>, 357 F.3d at 20.  In addition, a special
condition must entail "no greater deprivation of liberty than is
reasonably necessary" to achieve the goals of supervised release;
be consistent with any pertinent policy statements issued by the
Sentencing Commission; and have adequate evidentiary support in the
record.  <u>York</u>, 357 F.3d at 20 (quoting U.S.S.G. § 5D1.3(b)(2)).
Here, Roy argues that the special condition in question intrudes
unnecessarily and unreasonably upon his First Amendment right of
free association, given the purposes that supervised release is
meant to serve and the factors a district court is permitted to
consider when fashioning a special condition.  He contends that he
and Woodward are both consenting adults, and that, on balance, to
interfere with their relationship does not serve any rehabilitative
or protective interests strongly enough to outweigh the constraint
on the two adults' freedom of association.

A condition of supervised release is not rendered
automatically invalid "simply because it intrudes on a
constitutionally protected right." <u>Smith</u>, __ F.3d at __, 2006 U.S.

_____

[5]These factors are:  (A)  the defendant's history and
characteristics and the nature and circumstances of his offense;
(B) the need for adequate deterrence of future criminal conduct;
(C) the need to protect the public from further crimes by the
defendant; and (D) effective provision of educational or vocational
treatment, medical care, or other needed correctional treatment to
the defendant.  U.S.S.G. § 5D1.3(b)(2).

App. Lexis 3019 at *8. Rather, the test for ascertaining whether a release condition is permissible remains the "reasonably related" test described above, qualified, as always, by the statutory requirement that a condition invade a defendant's liberty no more than reasonably necessary in light of the goals the condition is meant to serve. As to the first part of this test, it is clear that the restriction on Roy's relationship with Woodward is intended to keep Roy at a safe distance from Woodward's young children. This serves the dual purposes of protecting the children from harm and encouraging Roy to refrain from recidivism. As to Roy's contention that the special condition deprives him of more liberty than is reasonably necessary under the circumstances, the condition was a considered response to a specific problem, imposed only after Roy had repeatedly lied to his parole officer and treatment counselor about his relationships with Woodward and her children and disdained their instructions to stay away from the family. In addition, the prohibition on Roy having contact with Woodward or her children is not absolute: such contact is to be permitted with prior approval of the probation officer, who can allow future contact if and when Roy progresses in his sex offender treatment. See Smith, __ F.3d at __, 2006 U.S. App. Lexis 3019 at *12-13 (citing flexibility of special condition barring father from contact with his daughter as one reason why condition did not overly burden defendant's liberty). In sum, the special condition

on Roy's supervised release serves a permitted goal in a reasonable manner, and the district court did not abuse its discretion in imposing it.

## III.

For the reasons stated above, the district court's decision is **<u>affirmed</u>**.