# United States Court of Appeals
## For the First Circuit

---

No. 13-1936

UNITED STATES OF AMERICA,

Appellee,

v.

MOISÉS MEDINA,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

---

Before

Torruella, Thompson, and Barron,
Circuit Judges.

---

Edward J. O'Brien, with whom O'Donnell, Trossello & O'Brien, LLP was on brief, for appellant.
Marshal D. Morgan, Assistant United States Attorney, with whom Juan Carlos Reyes-Ramos, Assistant United States Attorney, Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

---

March 4, 2015

---

**BARRON, Circuit Judge.** Moisés Medina failed to register as a sex offender when he moved to Puerto Rico in May of 2012, even though he had been convicted of a state sex offense four years earlier. As a result, Medina was arrested for violating the Sex Offender Notification and Registration Act, also known as SORNA, 18 U.S.C. § 2250. He then pled guilty and was sentenced to a thirty-month prison term, to be followed by a twenty-year term of supervised release.

The supervised release portion of the sentence included various conditions that Medina must follow or face returning to prison. Medina now challenges two of those conditions as well the length of the supervised release term. One of the two conditions restricts Medina from accessing or possessing a wide range of sexually stimulating material. The other requires Medina to submit to penile plethysmograph testing -- a particularly intrusive procedure -- if the sex offender treatment program in which he must participate as a condition of his supervised release chooses to use such testing.

We hold that the District Court erred in setting the length of the supervised release term. We further hold that the District Court inadequately justified the imposition of the supervised release conditions that Medina challenges. We therefore vacate Medina's supervised release sentence term and the conditions challenged on this appeal, and remand for re-sentencing.

-2-

Medina has a long criminal history, including robbery, attempted robbery, and (non-domestic) battery convictions. His only sex offense, and the source of his registration obligations under SORNA, is a 2008 conviction in Indiana for sexual battery of a minor. The pre-sentence report's description of the circumstances of the Indiana offense -- a description Medina did not dispute -- is very disturbing.

According to the report, Medina's three-year-old stepdaughter told his then-wife in 2007 that Medina had "'peed' in her mouth." Medina's then-wife proceeded to ask her three other children if Medina had "had any inappropriate contact with them." The report stated that Medina's then-wife learned that Medina had "fondled" his seven-year-old stepdaughter on "three or four separate occasions."

Medina ultimately pled guilty to a single count of sexual battery of a minor. The conviction was based on Medina's abuse of the seven-year-old stepdaughter. Medina was sentenced to seven-and-a-half years in prison, of which he served three years before he was released on probation in July of 2011.

After release on probation, Medina lived in Indiana and held a job there. On April 29, 2012, however, he quit that job. Then, on May 3, he failed to report for a polygraph examination that the terms of his probation required. On May 11, he was

suspended from Indiana's Sex Offender Treatment Program. Some time that same month, Medina moved to Puerto Rico.

On January 10, 2013, Medina was arrested in Puerto Rico for violating SORNA because he had failed to register there as a sex offender, as he was required to do as a consequence of his earlier Indiana conviction. See 18 U.S.C. § 2250(a). Two months later, on April 5, 2013, Medina entered into a plea agreement. The District Court accepted Medina's plea to the SORNA offense that same day. On July 8, 2013, the District Court sentenced Medina to thirty months of incarceration, followed by twenty years of supervised release.

Medina now appeals to this court.[1] He challenges certain aspects of the supervised release portion of his sentence. We consider those challenges in turn.

**II.**

Medina first argues that the District Court erred when it imposed a supervised release term of twenty years. Medina traces that error to the District Court's classification of his failure-to-register offense under SORNA as a "sex offense."

Under the Sentencing Guidelines, a conviction for a "sex offense" results in a recommended range for a term of supervised

---

[1] Medina's plea agreement included a waiver-of-appeal clause, but the government concedes that Medina never knowingly waived his right to challenge the supervised release term and conditions on appeal since the District Court assured Medina at the plea hearing that such challenges would be preserved.

release that spans from a lower bound of the statutory minimum of five years to an upper bound of life. See 18 U.S.C. § 3583(k); U.S.S.G. § 5D1.2(b)(2). But Medina argues that the guidelines do not actually treat a SORNA violation as a "sex offense." And thus Medina argues that, under the guidelines, the actual recommended term of supervised relief for the SORNA offense is only the statutory minimum of five years, with no higher maximum term. See United States v. Goodwin, 717 F.3d 511, 520 (7th Cir. 2013).

The guidelines are not binding on the District Court. United States v. Booker, 543 U.S. 220, 245 (2005). A mistaken application of the guidelines, however, can constitute a reversible sentencing error. That is because "[o]nly after a court has correctly calculated the applicable [guidelines recommendation] . . . can it properly exercise its discretion to sentence a defendant within or outside the applicable Guidelines range." United States v. Millán-Isaac, 749 F.3d 57, 66 (1st Cir. 2014). Thus, Medina contends, we must vacate his supervised release sentence because the District Court mis-classified his SORNA offense as a "sex offense" and thus committed a guidelines calculation error.

In determining the appropriate standard of review, we note that Medina did object to the recommended term of supervised release set forth in the probation office's pre-sentence report. That report classified Medina's SORNA offense as a "sex offense."

That report thus recommended that Medina receive a term of supervised relief somewhere within a range from five years to life. Medina did not, however, press that same objection to the District Court at the sentencing hearing. And Medina failed to do so even though he had an opportunity to make that objection, and even though the District Court adopted the same guidelines calculation as the report.

In consequence, the government argues that we may review Medina's challenge to the proper classification of his SORNA offense only under the strict, plain error standard. Medina disputes that. For purposes of this appeal, however, we may assume the plain error standard applies without prejudicing Medina.[2] And that is because Medina's challenge succeeds even under that more onerous standard.

The District Court set the term of supervised release after calculating the guidelines range for that term to be five years to life. That calculation was erroneous, as the government

---

[2] This Circuit has never decided what standard of review applies when a defendant objects to a pre-sentence report but does not reassert that objection at sentencing, and other circuits have diverged. Compare United States v. Hurst, 228 F.3d 751, 760-61 (6th Cir. 2000) (holding that a sentencing court need not address a defendant's objections to a pre-sentence report where the defendant "did not expressly call them to the court's attention during the sentencing hearing") with United States v. Sager, 227 F.3d 1138, 1148 (9th Cir. 2000) ("It is technically enough, of course, to file a written objection to the [pre-sentence report], but an astute attorney filing such an objection would also raise the issue again at sentencing if it appears to have gone unaddressed.").

now concedes. The term "sex offense" in section 5D1.2(b) of the sentencing guidelines does not encompass a SORNA violation for failing to register as a sex offender. Our reasons for so concluding are the same as those set forth in the Seventh Circuit precedent that the government invokes in conceding the District Court's error. See Goodwin, 717 F.3d at 519-20.

Further, the District Court's contrary interpretation of the meaning of "sex offense" was -- as the Seventh Circuit also held in Goodwin, and as the government also now concedes -- "(1) an error or defect (2) that is clear or obvious (3) affecting the defendant's substantial rights." Id. at 518. And while the government does not specifically make the further concession that the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings," Johnson v. United States, 520 U.S. 461, 467 (1997) -- the last prong of the plain-error test -- we believe that the District Court's error necessarily had that effect on the sentencing, and the government does not argue otherwise.

By mis-classifying Medina's SORNA offense, the District Court imposed a supervised release term that it believed fell within the guidelines-recommended range. In fact, however, the term imposed was four times longer than the term the guidelines actually recommend. See Goodwin, 717 F.3d at 520-21 (explaining the proper calculation, and finding the fourth plain-error prong

-7-

met under similar circumstances); cf. United States v. Farrell, 672 F.3d 27, 37 (1st Cir. 2012) (finding the fourth prong met where the government did not argue it was not met, and where the district court imposed a sentence based on erroneous statutory minimum and guidelines determinations).

We thus conclude that the District Court did commit plain error. And, accordingly, we vacate and remand so that the District Court may take account of the guidelines' actual recommendation regarding the appropriate term of supervised release for Medina's SORNA offense.

## III.

Medina also challenges two conditions that he must obey for the duration of his supervised release term, however long it may turn out to be. In particular, Medina challenges a condition prohibiting him from possessing or accessing sexually stimulating materials and a condition mandating his compliance with penile plethysmograph testing if his sex offender treatment program requires such testing.

There are two basic kinds of supervised release conditions. The first kind are mandatory conditions. By operation of statute, mandatory conditions are automatically imposed in every case in which a defendant receives supervised release as part of his sentence. See 18 U.S.C. § 3583(d). The second kind are special conditions. These conditions are imposed at the discretion

of the district court.  See id.  The two conditions that Medina challenges are of this latter kind.

Although district courts have significant discretion to impose special conditions of supervised release, that discretion is not unlimited.  A district court may impose a special condition only if the district court first determines that the condition:

> (1) is reasonably related to the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
>
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in [18 U.S.C. §] 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
>
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(a).

18 U.S.C. § 3583(d).

In this way, the governing statute directs district courts, before imposing a special condition, to take account of "the nature and circumstances of the offense and the history and characteristics of the defendant," id. § 3553(a)(1), the need "to afford adequate deterrence to criminal conduct," id. § 3553(a)(2)(B), the need "to protect the public from further crimes of the defendant," id. § 3553(a)(2)(C), and the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," id. § 3553(a)(2)(D). By requiring consideration of these factors, the statute ensures that district courts will

-9-

impose a special condition only if the condition will further at least one of "the three legitimate statutory purposes of deterrence, protection of the public, and rehabilitation."[3] United States v. Gementera, 379 F.3d 596, 600 (9th Cir. 2004); accord United States v. York, 357 F.3d 14, 20 (1st Cir. 2004).

But the statute does more than instruct district courts to ensure a "reasonabl[e] relat[ion]" between the condition and the sentencing goals the condition is intended to serve with respect to the individual defendant.  18 U.S.C. § 3583(d).  The statute also requires district courts to ensure the condition "involves no greater deprivation of liberty than is reasonably necessary" given who the defendant is, the defendant's offense and criminal history, and the ends of supervised release.[4]  See United States v. Roy, 438

---

[3]   The retributive purpose, which sentencing generally may also serve, is reflected in the following sentencing factor set forth in 18 U.S.C. § 3553(a)(2)(A): "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  See Tapia v. United States, 131 S. Ct. 2382, 2387-88 (2011) (explaining that § 3553(a)(2)(A) concerns "retribution"). But the statute governing the imposition of a special condition of supervised release specifically omits this factor from the ones that a district court may consider in imposing a special condition. See 18 U.S.C. § 3583(d)(1); Tapia, 131 S. Ct. at 2388 ("[A] court may not take account of retribution (the first purpose listed in § 3553(a)(2)) when imposing a term of supervised release.").  That omission reflects the distinct purposes that supervised release aims to accomplish.

[4]   The statute additionally requires consideration of "any pertinent policy statements issued by the Sentencing Commission," 18 U.S.C. § 3583(d)(3), but the parties identify no policy statements that are pertinent to the issues before us.

F.3d 140, 144 (1st Cir. 2006); United States v. Smith, 436 F.3d 307, 311 (1st Cir. 2006).  And finally, our precedent further requires that the special condition "have adequate evidentiary support in the record."  Roy, 438 F.3d at 144.

With that framework in mind, we now consider the two special conditions that are at issue in this appeal.  With respect to each, Medina contends that the District Court failed to provide the statutorily required justification.

**IV.**

We first address Medina's challenge to the District Court's imposition of the special condition concerning sexually stimulating material.  That condition provides that Medina may not:

> view, use, possess, purchase, distribute and/or subscribe to any form of pornography, erotica or sexually stimulating visual or auditory material, electronic media, computer programs or services including but not limited to videos, movies, pictures, magazines, literature, books, or other products depicting images of nude adults or minors in a sexually explicit manner.

The condition further forbids Medina from entering any location where such material can be accessed, and from "accessing any material that relates to the activity in which the defendant was engaged in committing the instant offense, namely child pornography."[5]

---

[5]  Medina does not challenge this condition as vague, and so we do not express any opinion on whether it presents a vagueness

-11-

Medina challenges this condition as a whole. But Medina first argues that the last sentence of this condition must be vacated. He argues that the text of this last sentence reveals that it is designed for a defendant who has been convicted of a "child pornography" offense, a type of offense for which Medina was not even charged. The government concedes as much -- in part, no doubt, because striking this portion of the condition has no practical consequence. That is because a separate, mandatory condition of supervised release already prohibited Medina from committing "another Federal, State, or local crime during the term of supervision." 18 U.S.C. § 3583(d). That condition thus necessarily prohibited Medina from possessing illegal material, including, for example, child pornography. See 18 U.S.C. § 2252.

With that portion of the condition out of the way, our attention focuses on the remainder of the condition, which would prohibit Medina from possessing and accessing "any form of pornography, erotica or sexually stimulating visual or auditory material." In practical effect, this condition restricts only "legal material involving consenting adults," United States v.

---

problem. Cf. United States v. Perazza-Mercado, 553 F.3d 65, 81 (1st Cir. 2009) (Howard, J., dissenting in part) (raising vagueness concerns with respect to a condition that prohibited a defendant from possessing "any kind of pornographic material").

-12-

<u>Perazza-Mercado</u>, 553 F.3d 65, 76 (1st Cir. 2009), and the government does not argue otherwise to us.[6]

The government argues, as it did with respect to Medina's challenge to the length of his supervised release term, that we may review the imposition of this condition only for plain error and not for abuse of discretion as would otherwise be the case. <u>See id.</u> at 69. Medina responds that he objected when the probation office recommended the condition in the pre-sentence report.

_____

[6] In their briefs, Medina and the government address their arguments to the validity of the special condition as a whole. They do not separately discuss the parts of the condition that refer to "erotica" and "sexually stimulating visual and auditory material." Neither party therefore addresses whether the condition, in addition to prohibiting Medina from possessing or accessing adult pornography, also prohibits Medina from possessing or accessing otherwise legal erotic materials involving simulated sexual depictions of children, such as "virtual child pornography." <u>See</u> <u>Ashcroft</u> v. <u>Free Speech Coalition</u>, 535 U.S. 234, 250-56 (2002) (holding unconstitutional a criminal prohibition on "virtual child pornography" which does not involve images of actual children). In the absence of briefing from the parties, we will not address here whether the condition is properly interpreted to prohibit Medina from possessing such material, nor whether that particular aspect of the condition might be adequately explained on this record by the nature of Medina's prior offense. <u>See</u> <u>Perazza-Mercado</u>, 553 F.3d at 74-79 (vacating a condition that prohibited "possession of any kind of pornographic material" without addressing this issue).
Likewise, the parties' briefs do not separately address the portion of the condition prohibiting Medina from entering locations where sexually stimulating materials may be accessed. That portion of the condition was not present in <u>Perazza-Mercado</u>, and it may raise distinct issues. <u>Cf.</u> <u>id.</u> at 79-80 (Howard J., dissenting) (expressing concern that "allowing unfettered access to adult pornography could lead [a defendant] . . . to places where opportunities may exist to commit other crimes against minors").
Given the parties' lack of attention to those aspects of this supervised release condition, we will leave them to the District Court on remand.

-13-

However, Medina did not raise his objection at the sentencing hearing, despite the opportunity that he had to do so and despite the fact that he raised other issues. Thus, here, too, we will assume that the plain error standard applies, as, once again, we find reversible error even under that more demanding standard.

In challenging the condition, Medina relies primarily on our decision in Perazza-Mercado. There, we vacated on plain-error review a supervised release condition that imposed a complete ban on a defendant's possession of pornographic materials. We explained that a district court must "provide a reasoned and case-specific explanation for the sentence it imposes." Id. at 75 (quoting United States v. Gilman, 478 F.3d 440, 446 (1st Cir. 2007)). And we concluded that the district court had failed to do so. See id.

We did observe in Perazza-Mercado that "'a court's reasoning can often be inferred' after an examination of the record." Id. (quoting United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc)). But we concluded that no adequate explanation for the pornography restriction could be inferred from the record. Id. at 76. In particular, we observed, there was no evidence in the record sufficient to support the conclusion that pornography had "contributed to [Perazza's] offense or would be likely to do so in the future." Id. That was so even though Perazza's crime of conviction ("knowingly engaging in sexual

-14-

contact with a female under the age of twelve") and admitted past behavior (which included a "pattern of illicit conduct toward young girls") were "cause for great concern." Id. at 66, 76. We therefore concluded that the district court had committed plain error in imposing the condition. Id. at 75.

Here, we are bound by Perazza-Mercado. The District Court did not expressly justify the condition in terms of the statutory considerations of deterrence, protection of the public, and rehabilitation -- or in any other terms. See id. Nor can the District Court's unarticulated reasoning "'be inferred' after an examination of the record." Id. As in Perazza-Mercado, "there is no evidence in the record" to indicate that such material "contributed to [Medina's] offense or would be likely" to contribute to recidivism in the future given Medina's particular history and characteristics. Id. at 76.

The probation officer here did recommend the condition in the pre-sentence report, unlike in Perazza-Mercado, where the report did not mention such a condition at all, see id. at 74. But the probation officer provided no explanation for the condition -- not even in response to Medina's objection. She simply left the decision whether to impose the condition "to the sound discretion of the [District] Court."

Nor, under Perazza-Mercado, can the required explanation be derived from Medina's criminal history. Medina's failure-to-

-15-

register offense did not itself, quite obviously, involve the use of pornographic or other sexually stimulating materials. And, revolting as the actions that led to Medina's 2008 conviction are, the record here, under the controlling reasoning of Perazza-Mercado, fails to reveal a link between Medina's commission of that offense and the prohibited adult materials. See id. at 66, 76.

The government responds by identifying one distinction between this case and Perazza-Mercado. There, we noted that "there was no suggestion in the [pre-sentence report] or at sentencing that appellant had abused or even possessed pornography in the past." Id. at 76 (emphasis added). Here, by contrast, as the government points out, the pre-sentence report does contain a reference to the defendant's use of pornography at approximately the same time as his underlying sex offense. Specifically, the report notes that Medina's ex-wife "indicated that they often watched pornography together while having intercourse."

But nothing in the record links this single reference, involving lawful adult behavior, to the criminal acts that serve as the basis for the special supervised release condition. See United States v. Ramos, 763 F.3d 45, 64 n.28 (1st Cir. 2014) (declining to distinguish Perazza-Mercado based on a similar reference to adult pornography in the pre-sentence report, because "nothing in the record justifies, as far as we can tell, the conclusion that viewing adult pornography was a habit that 'contributed to [the

defendant's] offense or would be likely to do so in the future'"). Nor can it suffice for the government to assert, as it does, that the condition may be inferentially justified because there is a general correspondence between sex offender recidivism and the use of pornography.  If such an asserted correspondence sufficed, we would not have invalidated the pornography ban in Perazza-Mercado. See 553 F.3d at 78.  We thus conclude that, given our controlling precedent, the record before us "simply does not support the conclusion that the condition would promote the goals of supervised release without effecting a greater deprivation of liberty than reasonably necessary to achieve those goals."  Id. at 75.

The government's final attempt to defend the condition also fails.  The government contends that our decision in United States v. Sebastian, 612 F.3d 47 (1st Cir. 2010), indicates that the District Court was not obliged to offer more of an explanation for this special condition than was given.  But that case, unlike this one and unlike Perazza-Mercado, did not involve a "total ban on . . . possession of any pornography in the home."  Id. at 52. The condition in Sebastian instead prohibited possession of pornography only "if [Sebastian's] [sex offender] treatment program mandated such a ban."  Id.  Sebastian thus explained that this "conditional limitation" was "hardly the same" as the blanket ban in Perazza-Mercado, and did "little more than require Sebastian to follow the rules of any program he may be required to attend" as

-17-

part of his supervised release. Id. In consequence, we concluded that the District Court's explanatory obligations had been met, as they were not the same as they had been in Perazza-Mercado. Id.

Here, though, the ban is total, as in Perazza-Mercado, rather than conditioned on the requirements imposed by a sex offender treatment program, as in Sebastian. And thus, we believe, as we recently held in a similar case, that Perazza-Mercado sets forth the appropriate standard for determining whether the condition is justified. See Ramos, 763 F.3d at 64 n.29 (following Perazza-Mercado, and distinguishing Sebastian, where the case involved a total ban on pornography possession).

Under that controlling precedent, the imposition of this condition, on this record, is plain error. See id. at 64; Perazza-Mercado, 553 F.3d at 76. There "may well be a reason to impose a pornography ban" in this case. Perazza-Mercado, 553 F.3d at 76. But if so, the District Court has not yet provided it. Thus, we vacate the District Court's imposition of this special condition.

**V.**

We now turn to Medina's remaining challenge. Medina objects to the District Court's requirement that he submit to penile plethysmograph, or PPG, testing, if the sex offender treatment program he must participate in as a condition of his supervised release requires such testing.

-18-

In bringing this challenge, Medina does not contest the requirement that he undergo sex offender treatment as a special condition of supervised release. See United States v. Morales-Cruz, 712 F.3d 71, 75-76 (1st Cir. 2013) (finding no abuse of discretion in that case in the imposition of a sex offender treatment special condition in connection with a SORNA conviction). And the treatment condition that the District Court imposed does not require, by its terms, that the sex offender treatment program Medina must complete actually use PPG testing.[7] In fact, the condition does not address at all how the treatment program may use such testing. But the condition does specifically oblige Medina to comply with PPG testing if his particular treatment program chooses to order such testing. And it is that mandatory compliance obligation to which Medina objects.

PPG testing "involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by measuring minute changes in his erectile responses." United

---

[7] The condition provides:
The defendant shall undergo a sex-offense-specific evaluation and participate in a sex offender treatment/and or [sic] mental health program arranged by the Probation Officer. The defendant shall abide by all rules, requirements, and conditions of the sex offender treatment program(s), including submission to testing; such as polygraph, penile plethysmograph (PPG), Abel Assessments, visual reaction testing or any other testing available at the time of his release.

States v. Weber, 451 F.3d 552, 554 (9th Cir. 2006) (quoting Jason R. Odeshoo, _Of Penology and Perversity: The Use of Penile Plethysmography on Convicted Child Sex Offenders_, 14 Temp. Pol. & Civ. Rts. L. Rev. 1, 2 (2004)).  Thus, where the pornography-ban condition seeks to limit Medina's viewing of pornographic material, PPG testing affirmatively requires it, and in extremely invasive circumstances.  See id.  Testing may take as long as several hours to complete per session.  Id. at 563.

The testing is controversial, both as to whether it is effective and as to whether it is unduly invasive and thus degrading.  See id.  And, in consequence of such concerns, two of our sister circuits have imposed substantial explanatory obligations on district courts that choose to mandate submission to PPG testing if prescribed by a required sex offender treatment program.  See United States v. McLaurin, 731 F.3d 258, 263 (2d Cir. 2013); Weber, 451 F.3d at 568-69.

Medina relies on these precedents in contending that the District Court failed to offer a sufficient justification for the PPG condition here.  Before directly addressing that contention, however, we must first address the government's argument that this Circuit's precedent limits the scope of our review until such time as the treatment program actually requires Medina to submit to PPG testing.

In arguing that our review is limited, the government does not dispute that Medina properly preserved his objection to this condition. Medina first objected to the pre-sentence report's recommendation that he be required to submit to PPG testing if ordered to do so as part of a sex offender treatment program. Medina lodged that objection "on Daubert/Frye unreliability standards"[8] as well as by contending that PPG testing "is physically invasive and scientifically questionable." Medina went on to explain that such testing "is degrading and violates the defendant's right to be free from cruel, degrading, inhuman treatment and his right to privacy and to be protected from medical abuse."

Then, at sentencing, Medina's counsel renewed the objection. Medina's counsel emphasized that she "object[ed] to the imposition of that treatment, in particular to the PPG. We

---

[8] The references presumably were to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), which set forth the inquiry into scientific reliability that a district court must undertake before admitting expert testimony into evidence. Although neither Daubert nor Frye has a direct application to conditions of supervised release, the defendant appears to have invoked those cases as a shorthand way of attacking the reliability of PPG testing. And the Ninth Circuit has observed that "[c]ourts have uniformly declared that the results of [PPG] tests are 'inadmissible as evidence'" under the Daubert standard because "'there are no accepted standards for this test in the scientific community.'" Weber, 451 F.3d at 565 n.15 (quoting Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1266 (9th Cir. 2000)).

understand it's invasive, it's humiliating, it hasn't even passed the <u>Daubert</u> standard."

Confronted with a timely objection to a special condition of supervised release, we ordinarily would review a district court's imposition of that aspect of the sentence for abuse of discretion. See <u>Perazza-Mercado</u>, 553 F.3d at 69. But the government argues that Medina's burden to show error in the imposition of the sentence is even greater here because there is necessarily uncertainty over how and why PPG testing would actually be used on Medina -- if, that is, it ever is used at all.

Under our decision in <u>Sebastian</u>, the government argues, the contingent nature of this condition requires Medina to show that PPG testing is "facially unreasonable" in order to invalidate it on direct appeal. 612 F.3d at 52. And that means, the government further contends, that Medina's challenge must fail for one of two reasons.

First, the government argues that the challenge is premature because the actual application of the testing will occur, if at all, only in the future, and will depend on the procedures that the sex offender treatment program chooses to use. Second, the government argues that, to the extent the challenge is not premature, it is still without merit because PPG testing is "widely used for evaluating and treating sex offenders like" Medina and thus the requirement to submit to it if prescribed by a treatment

program cannot possibly be deemed unreasonable on its face at present. But we do not find persuasive either of the government's contentions about why Medina's challenge necessarily fails under that "facially unreasonable" standard.

**1.**

The government does not use the word "ripeness" in making the argument that Medina's challenge is premature. But the argument would seem to be a close cousin of a ripeness argument that two circuits have accepted in this context. See United States v. Rhodes, 552 F.3d 624 (7th Cir. 2009); United States v. Lee, 502 F.3d 447 (6th Cir. 2007).

Those circuits emphasized that contingent PPG-testing conditions like this one "implicate[] only the potential use of a penile plethysmograph," and that "there is no guarantee that [the defendant] will ever be subject to plethysmograph testing." Lee, 502 F.3d at 450; see also Rhodes, 552 F.3d at 628. Moreover, the Sixth and Seventh Circuits emphasized that the defendants in those cases were still serving long prison sentences and would not potentially face PPG testing for many years, see Rhodes, 552 F.3d at 628 (at least eight-and-a-half years); Lee, 502 F.3d at 450 (not before 2021), and thus that scientific or legal developments might render the testing an anachronism by the time the defendants were released from prison, see Rhodes, 552 F.3d at 628 ("[T]he development of science or the law may render the PPG testing

-23-

irrelevant or even illegal, or maybe the movement will be in a different direction altogether . . . ."); Lee, 502 F.3d at 451 ("We cannot speculate on what will happen by 2021 with respect to penile plethysmograph testing. For example, by then, the test may be held to violate due process rights. Or, its reliability will have been debunked. Or, perhaps a less intrusive test will have replaced it.").

But this Circuit concluded in United States v. Davis, 242 F.3d 49, 51 (1st Cir. 2001) (per curium), that a challenge to even a contingent supervised release condition was ripe, and "not hypothetical," where the judgment explicitly spelled out the condition and the defendant challenged "the special condition itself, not its application or enforcement." Id. We explained that "[t]he judgment imposing sentence, of which the challenged special condition is a part, is a final judgment." Id. And we permitted the challenge to proceed even though the condition at issue merely required the defendant to cooperate with hypothetical future "investigations and interviews" by his probation officer, noting that "Davis's term of supervised release will commence in less than two months." Id. at 50-51.

We conclude the challenge in this case, like the one in Davis, is ripe. As in Davis, the judgment imposing the sentence in this case expressly spells out the condition that the defendant

-24-

challenges.[9]  Moreover, Medina was sentenced to thirty months in prison in July of 2013.  That means he, too, could be subject to the condition he challenges in the near term, when he is released from prison and the treatment program commences.

Finally, consistent with the requirement imposed by Sebastian's "facially unreasonable" standard, Medina does not argue that PPG testing is impermissible because it will be used against him in some unusually inappropriate or ineffective way.  See 612 F.3d at 52.  And thus his challenge does not depend on the particular way in which his treatment program may choose to use PPG testing.  Medina instead contends that PPG testing is so inherently invasive and unreliable that the requirement that he submit to its use, on the record before the District Court, is unlawful however the testing may be used.  Cf. Davis, 242 F.3d at 51-52 (upholding a conditional condition on direct appeal since it had "obvious relevance" to the defendant's "probationary status" and would not "necessarily" raise the problems that the defendant was concerned about); Sebastian, 612 F.3d at 52 (emphasizing that the defendant

---

[9]  Because the conditional condition challenged in this case, as in Davis, is explicitly spelled out in and allowed by the District Court's judgment, we need not address here the distinct ripeness issues that could arise if a defendant sought to challenge the possibility of PPG testing in connection with a special condition that required only that the defendant comply with a sex offender treatment program's rules without discussing PPG testing in particular.  Cf. Weber, 451 F.3d at 561 n.12 (distinguishing a case involving a special condition requiring only compliance with a program's rules and not mentioning PPG testing specifically).

-25-

had a limited basis on which to challenge a contingent condition on direct review, as "what [pornography] ban, if any, may be imposed is uncertain"). And, indeed, Sebastian applied the "facially unreasonable" standard to adjudicate on direct review such a facial challenge to a contingent condition of supervised release, even though that condition would not take effect for another decade. See 617 F.3d at 52 (finding the condition adequately justified).[10]

**2.**

That leaves only the government's argument that Sebastian's "facially unreasonable" standard requires that we reject Medina's facial challenge as meritless due to the "widespread" use of PPG testing in sex offender treatment programs and the fact that Medina will be forced to submit to such testing, if at all, only in connection with such a program. But we do not find this argument for rejecting Medina's challenge persuasive either.

---

[10] Of course, as Sebastian shows, the requirement that the defendant challenge the condition itself and not the nature of its future implementation may mean that a defendant's "facially unreasonable" challenge to a contingent condition will fail. See Sebastian, 612 F.3d at 52. And when that occurs, "[i]t remains open to [the defendant] to challenge specific applications of" the contingent condition "when actually imposed in the future." Id. (citing York, 357 F.3d at 23); see also 18 U.S.C. § 3583(e)(2) (allowing a district court to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release"). But the availability of that distinct form of challenge to a condition of supervised release provides no basis for denying Medina the right to challenge this significant part of his sentence on direct appeal. See Weber, 451 F.3d at 569-70.

Sebastian's application of the "facially unreasonable" standard did take account of the fact that the challenged condition might facilitate a sex offender treatment program. See 612 F.3d at 52. And Sebastian further took account of the importance of allowing the district court to mandate compliance with such a treatment program in advance. Id. Applying those considerations, Sebastian concluded (on review for plain error) that a limited justification rooted in the value of ensuring compliance with treatment-program rules sufficed to uphold the conditionally imposed pornography ban there at issue, even though there was a factual dispute about the efficacy of the use of such bans in general. See id.

But Sebastian did not hold that a minimal justification relating to compliance with treatment-program rules would suffice to ward off a challenge to the facial reasonableness of every condition connected with a treatment program that a district court might choose to impose, no matter its nature. See id. And Medina contends that PPG testing raises distinct issues because it is so invasive and of such questionable reliability. There is no question that, in combination, these concerns do make his challenge to PPG testing distinguishable from the challenge to the condition at issue in Sebastian itself. For that reason, we do not believe Sebastian compels us to reject Medina's challenge, even if, as the government asserts, PPG testing is widely used in sex offender

treatment programs. Instead, Medina's challenge must be confronted on its own terms and in light of the particular arguments the government makes about the reasonableness of this condition on the record in this case.

Likewise, the case on which Sebastian relied in setting forth the "facially unreasonable" standard -- United States v. York, 357 F.3d 14, 23 (1st Cir. 2004) -- does not dictate rejection of Medina's facial challenge to this condition. In rejecting a challenge to a requirement that the defendant in that case submit to polygraph testing as part of his supervised release, York focused largely on considerations unique to polygraph testing and on arguments the government advanced about the condition's reasonableness that are not relevant here. See id. For example, in rejecting the defendant's challenge to polygraphy as "inherently unreliable," York emphasized that even an unreliable lie-detector test could deter the defendant from lying and thus further the goals of supervised release. Id.

In this case, however, the government (for good reason) makes no similar contention that PPG testing would be useful in treating Medina even assuming that Medina was right that such testing is both unusually invasive and unreliable. Thus, the particular rationale that York relied on to uphold the polygraph condition's facial reasonableness in that case is not applicable here.

Finally, we emphasize, that in Sebastian, the defendant had made no objection to the condition below. 612 F.3d at 50. We thus applied the strict plain error standard to the defendant's contention that the pornography-ban condition was facially unreasonable. Id. And we referenced that strict standard in explaining why we saw no need to resolve the "empirical question" of whether pornography bans assist in sex offender treatment. See id. at 52. Similarly, in York, our review of the reasonableness of the polygraph condition also took place without there having been "[a] timely objection and the creation of a record [that] would have permitted both the district court and this court to review York's claims with the benefit of that information." 357 F.3d at 19.

By contrast, here the defendant did make a timely objection that the contingent supervised release condition was inherently humiliating and unreliable and thus impermissible -- an objection that clearly asserted the condition was unreasonable on its face. Our review, therefore, is not circumscribed in this case, as it was in Sebastian and York, by the defendant's lateness in raising the challenge.

Thus, for all of these reasons, we do not believe our prior precedent, whether Sebastian or York, forecloses Medina's challenge to the PPG aspect of the supervised release portion of

his sentence.  And so we turn to the merits of his challenge to the PPG testing condition.

## B.

Our Circuit has not yet decided a case involving a challenge to the imposition of PPG testing as part of a condition of supervised release -- whether contingent on a treatment program's prescription or otherwise.  And thus we have not considered before whether such a condition may be successfully challenged under Sebastian's "facially unreasonable" standard. But other circuits have addressed whether and when this type of condition may be imposed, and thus their analysis informs our assessment of Medina's facial challenge to the condition.

The Fourth Circuit has held that the "plethysmograph test is 'useful for treatment of sex offenders,'" and thus that a district court "clearly act[s] within its discretion in imposing" it as a condition, even, it seems, without offering much of an explanation for doing so.  United States v. Dotson, 324 F.3d 256, 261 (4th Cir. 2003) (quoting United States v. Powers, 59 F.3d 1460, 1471 (4th Cir. 1995)).  But while the government urges us to follow Dotson here, and thus to reject Medina's facial challenge to the condition, two other circuits have taken a very different approach. And their analyses support the conclusion that, at least on this record, the condition at issue in this case is facially unreasonable.

The Second Circuit, in <u>United States</u> v. <u>McLaurin</u>, identified significant constitutional concerns with PPG testing and thus required that a district court satisfy strict scrutiny before imposing a PPG testing obligation as a supervised release condition.[11]  731 F.3d 258, 261 (2d Cir. 2013).  The Second Circuit did so, moreover, even though the condition did not directly mandate PPG testing and instead made submission to such testing contingent on the treatment program's decision to require it.  <u>Id.</u>

Seeing a "clear distinction between penis measurement and other conditions of supervised release," <u>id.</u> at 264, the court held that PPG testing is so invasive that "it could be justified only if it is narrowly tailored to serve a compelling government interest," <u>id.</u> at 261.  <u>McLaurin</u> explained that "the procedure inflicts the obviously substantial humiliation of having the size and rigidity of one's penis measured and monitored by the government under the threat of reincarceration for a failure to fully cooperate."  <u>Id.</u> at 263.  Thus, before requiring compliance with PPG testing prescribed by a treatment program, <u>McLaurin</u> held that a district court must, "at a minimum, make findings, sufficiently informative

---

[11]  Because we conclude that the District Court's justification for the condition in this case was inadequate as a statutory matter, we need not address the existence of a separate, substantive due process limitation on supervised release conditions.  <u>Cf.</u> <u>United States</u> v. <u>Smith</u>, 436 F.3d 307, 310 (1st Cir. 2006) ("It is beyond hope of contradiction that those who are convicted of crimes against society lose a measure of constitutional protection.").

and defendant-specific for appellate review, that the test is therapeutically beneficial, that its benefits substantially outweigh any costs to the subject's dignity, and that no less intrusive alternative exists." Id.

The Ninth Circuit reached a similar result in United States v. Weber, although it relied exclusively on the justificatory requirements imposed by the statute governing the imposition of special conditions of supervised release. 451 F.3d at 552-53 (citing 18 U.S.C. § 3583(d)). The court emphasized that "[p]lethysmograph testing not only encompasses a physical intrusion but a mental one, involving not only a measure of the subject's genitalia but a probing of his innermost thoughts as well." Id. at 562-63. Because such testing is "exceptionally intrusive in nature and duration," the Ninth Circuit held that "the procedure implicates a particularly significant liberty interest." Id. at 563. The Ninth Circuit further explained that there were serious concerns about both the testing's reliability and efficacy, including its "susceptibility to manipulation via faking," id. at 564, and the "lack[ of] 'uniform administration and scoring guidelines,'" id. at 565 (quoting Walter T. Simon & Peter G.W. Schouten, The Plethysmograph Reconsidered: Comments on Barker and Howell, 21 Bull. Am. Acad. Psychiatry & L. 505, 510 (1993)).

On the basis of those concerns, the Ninth Circuit construed the statute governing the imposition of special

conditions of supervised release to require "heightened procedural protections" before a district court could mandate submission to PPG testing if a sex offender treatment program chose to use the procedure. Id. at 570. These protections included the requirement that the district court undertake a "consideration of evidence that plethysmograph testing is reasonably necessary for the particular defendant based upon his specific psychological profile." Id. at 569-70.

Weber further explained that, under the governing statute, a district court needed to give consideration to available alternatives to PPG testing, such as self-reporting interviews, polygraph testing, and "Abel testing," which measures the amount of time a defendant looks at particular photographs. Id. at 567-68. And finally, Weber explained that, before imposing such a condition, the district court must "support its decision on the record with record evidence that the condition of supervised release sought to be imposed is 'necessary to accomplish one or more of the factors listed in § 3583(d)(1)' and 'involves no greater deprivation of liberty than is reasonably necessary.'"[12] Id. at 561 (quoting United States v. Williams, 356 F.3d 1045, 1057 (9th Cir. 2004)).

_____

[12]  Judge Noonan, who concurred, would have gone further "to hold the Orwellian procedure at issue to be always a violation of the personal dignity of which prisoners are not deprived." Weber, 451 F.3d at 570 (Noonan, J., concurring).

The concerns raised by the Second and Ninth Circuits accord with those we have previously raised about PPG testing, although we raised them outside the context of a supervised release condition mandating sex offender treatment. In two cases in the 1990s, we addressed the use of PPG testing as a prerequisite for continued public employment for employees who came under suspicion for, respectively, sexually abusing children and possessing child pornography. See Berthiaume v. Caron, 142 F.3d 12 (1st Cir. 1998); Harrington v. Almy, 977 F.2d 37 (1st Cir. 1992). And, in doing so, we acknowledged in each case the unusually invasive nature of such testing and the debate over its reliability. Berthiaume, 142 F.3d at 17; Harrington, 977 F.2d at 44.

In Harrington, we described the practice as involving "bodily manipulation of the most intimate sort," and explained that "[o]ne does not have to cultivate particularly delicate sensibilities to believe degrading the process of having a strain gauge strapped to an individual's genitals while sexually explicit pictures are displayed in an effort to determine his sexual arousal patterns." Harrington, 977 F.2d at 44. We also remarked on the lack of evidence regarding both "the procedure's reliability" and the availability of any "less intrusive means of obtaining the relevant information." Id. We thus held that it was a jury question whether the testing requirement had violated a public employee's constitutional rights such that the employee was

-34-

entitled to damages.  Id.  And the Second and Ninth Circuits relied on Harrington in vacating PPG-testing supervised release conditions.  See McLaurin, 731 F.3d at 261; Weber, 451 F.3d at 563.

In Berthiaume, we did back away somewhat from the conclusion in Harrington about the plaintiff's right to damages based on PPG testing.  See Berthiaume, 142 F.3d at 15-17. We concluded that PPG testing's acceptance by some in the treatment community at that time entitled a public official, who was a layperson, to qualified immunity from being liable for damages. Id. at 18.  But we explained that it was "highly pertinent" that the plaintiff there had, to some extent, consented to the test. Id.  And, we were careful to say that "[f]orcible administration" of PPG testing "would be an entirely different case."  Id.

## c.

Here, we are confronted with the "[f]orcible administration" of PPG testing, id., as we are reviewing a challenge involving a defendant's forced submission to such testing in connection with a criminal sentence.  And now faced with such a challenge to PPG testing, we conclude that the Second and Ninth Circuits were right to require a district court to provide a substantial justification before making submission to PPG testing part of a condition of supervised release.  And we further conclude that, absent such a justification, the condition is facially unreasonable.

In reaching this conclusion, we, like the Ninth Circuit, are not prepared to "say categorically that, despite the questions of reliability, [PPG] testing can never reasonably" be imposed as a special condition of supervised release. Weber, 451 F.3d at 556. But, like the Second Circuit, we "see a clear distinction" between the invasiveness of PPG testing "and other conditions of supervised release." McLaurin, 731 F.3d at 264. And the disputes regarding the procedure's reliability reinforce the concern raised by its distinctive invasiveness and unusual physical intrusion into an individual's most intimate realm. See Weber, 451 F.3d 564-65.

We thus conclude that the condition in this case cannot be deemed reasonable merely because of the general interest in ensuring in advance that a treatment program's rules will be followed. Nor can the condition be deemed reasonable simply because the condition concerns a procedure that arguably may facilitate the treatment program.

Instead, in order for the condition to be deemed facially reasonable, district courts must provide a more substantial justification, at least once a defendant objects. See 18 U.S.C. § 3583(d)(2) (mandating that special conditions "involve[] no greater deprivation of liberty than is reasonably necessary"); see also United States v. Malenya, 736 F.3d 554, 560 (D.C. Cir. 2013) (explaining that § 3583(d)(2) requires "balancing" the sentencing "goals against the defendant's liberty," and vacating a set of

-36-

challenged conditions); id. at 566 (Kavanaugh, J., dissenting) (agreeing with the majority that PPG testing in particular "implicates significant liberty interests and would require, at a minimum, a more substantial justification than other typical conditions of supervised release," but disagreeing with the vacatur of the other challenged conditions). Specifically, in such circumstance, a district court may not impose the condition unless it can justify it through "a thorough, on-the-record inquiry into whether the degree of intrusion caused by such testing is reasonably necessary 'to accomplish one or more of the factors listed in § 3583(d)(1)' and 'involves no greater deprivation of liberty than is reasonably necessary,' given the available alternatives." Weber, 451 F.3d at 568-69 (quoting Williams, 356 F.3d at 1057).

In conducting that inquiry, district courts must explain why the imposition of the PPG testing condition would be reasonable given the individual characteristics of the particular defendant who would be subject to the condition. See Weber, 451 F.3d at 569-70. And district courts must base that justification on "adequate evidentiary support in the record." Roy, 438 F.3d at 144. At least when confronted with a defendant's objection, we will not infer a district court's unexpressed justification for this particularly fraught condition from the record, as we have done with regard to other conditions. See Perazza-Mercado, 553 F.3d at

-37-

75 (explaining that "'there are limits' to our willingness to supply our own justification for a particular sentence" (quoting United States v. Gillman, 478 F.3d 440, 446 (1st Cir. 2007))).

### D.

In this case, the District Court made no effort to respond seriously and on the record to Medina's objections to the PPG testing condition. The District Court failed to do so even though Medina apprised first the probation office and then the District Court that he had serious concerns about the reliability of PPG testing and about its degrading nature. Instead, when Medina's counsel objected to the requirement to comply with a treatment program decision to use PPG testing, the District Court's response was curt. "The PPGs and all that. Yes, I am going to allow that. That's for sure." Medina's counsel then responded:

> [Medina's Counsel]: Okay. And just for purposes of the[] record, we object to the imposition of that treatment, in particular to the PPG. We understand it's invasive, it's humiliating, it hasn't even passed the Daubert standard.
>
> THE COURT: What he has done in his life is humiliating.
>
> [Medina's Counsel]: Excuse me?
>
> THE COURT: What he has done in his life is humiliating to victims. Now we're talking about humiliating him.

The District Court did not then elaborate on this unusually dismissive response.

-38-

The District Court thus said nothing specific about the required statutory considerations of deterrence, protection of the public, and rehabilitation in imposing the PPG condition. But see 18 U.S.C. §§ 3553(a), 3583(d). And, similarly, the District Court did not address whether the condition "involve[d] no greater deprivation of liberty than [was] reasonably necessary to" promote the statutory factors of deterrence, protection of the public, and rehabilitation, as related to the characteristics of the defendant and his criminal history. Id. § 3583(d). Nor did the District Court engage in an evidentiary inquiry into any of the relevant considerations or point to anything in the record that could have supplied an evidentiary basis for its imposition of the condition. See Roy, 438 F.3d at 144 (requiring "adequate evidentiary support in the record"). We thus vacate the imposition of the PPG testing portion of this special condition of supervised release, as in the absence of an on-the-record explanation for it, the condition was unreasonable on its face.

On remand, we emphasize, any decision to reimpose the PPG testing condition would require further factual development to show its reasonableness. The record presently contains no evidence that would support the sweeping judgment that the PPG testing condition was justified. For while the pre-sentence report does refer to PPG testing, the report says nothing about the reliability or efficacy of PPG testing in particular. Nor does the report offer any

explanation for how PPG testing would help to address concerns about recidivism given Medina's particular psychological profile and criminal history. And the report does not consider whether alternative methods such as self-reporting interviews, polygraph testing, and Abel testing would be equally effective. See Weber, 451 F.3d at 567-68.

In fact, the only "evidence" concerning PPG testing contained in the pre-sentence report is the conclusory statement that such testing is "a standard condition for this type of case[]." But that bare assertion is not adequate to show the condition was reasonable given the serious liberty and reliability concerns that PPG testing presents and that Medina specifically raised about such testing in objecting to the condition at sentencing.

Even in defending the condition on appeal, we note, the government "makes no distinct argument" that PPG testing "would be justified as a deterrent measure." McLaurin, 731 F.3d at 264. The government simply asserts to us that the testing would have a deterrent effect. The government does argue that the testing is justified by the interest in providing Medina treatment and protecting the public from possible future recidivism. But the government bases that assertion on the conclusory statement that PPG testing "is widely used for evaluating and treating sex offenders like" Medina. That statement comes unadorned, however,

with any explanation of what "widely used" means in practice or in context. Thus, "[t]he Government is unable to say, except with vague generalities, how the use of the device amounts to 'treatment,' and is unable to point to any expected, much less tangible, benefits to [Medina or the public] from the testing." Id. at 262. In that regard, the government offers no more in defense of the condition on appeal than was offered on behalf of the condition at sentencing. But the "showing" provided below, as we have explained, was insufficient to overcome Medina's contention that the condition is unreasonable on its face, and thus without regard to the particular way in which it may be applied to him.

## VI.

A district court has significant discretion in setting a term of supervised release. A district court also has significant discretion to craft special supervised release conditions. But a district court's exercise of its discretion must still accord with the statutory framework governing supervised release.

Here, we conclude that the District Court improperly determined the relevant guidelines range in setting the term of supervised release; imposed a blanket pornography ban without explanation and contrary to directly applicable precedent; and then imposed an extraordinarily invasive supervised release condition without considering the condition's efficacy in achieving the statutory purposes of such conditions, given both the particular

defendant whose liberty was at stake and the evident concerns he directly raised about the appropriateness and reliability of the condition to which he was being required to submit. Although we have been deferential in reviewing district courts crafting of special conditions of supervised release, Congress and our precedent required more of the district court in this instance. We thus <u>vacate</u> the supervised release sentence term, as well as the conditions challenged on this appeal, and remand the case for re-sentencing.