# United States Court of Appeals
## For the First Circuit

No. 04-2448

UNITED STATES OF AMERICA,

Appellee,

v.

GREGORY SMITH,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin and Cyr, Senior Circuit Judges.

Victoria M. Bonilla and Bourbeau & Bonilla on brief for appellant.
Michael J. Sullivan, United States Attorney, Michael J. Pelgro and Virginia Vander Jagt, Assistant United States Attorneys, on brief for appellee.

February 8, 2006

**SELYA**, **Circuit Judge**.  Defendant-appellant Gregory Smith challenges a condition of supervised release, imposed by the United States District Court for the District of Massachusetts, that directs him to stay away from his minor daughter, Alisa McDonald. The appellant claims that this supervised release condition (i) denies him his fundamental right to associate with family members and (ii) lacks any reasonable relationship to the permissible goals of supervised release.  After careful consideration, we uphold the challenged condition.

The background facts are readily rehearsed.  The government charged the appellant and his paramour, Megan McDonald, with a medley of narcotics offenses.  It charged the appellant with multiple firearms counts as well.  McDonald and the appellant both pleaded guilty.  On September 8, 1995, the district court sentenced the appellant to a ten-year incarcerative term, to be succeeded by an eight-year term of supervised release.

Megan McDonald's cooperation saved her from a prison sentence.  During the pendency of the proceedings, she gave birth to the appellant's daughter.  The relationship between the appellant and McDonald had soured.  One consequence was that the appellant did not see the child during his immurement.

In 1998, while still incarcerated, the appellant initiated a proceeding in the Barnstable Probate Court to obtain visitation rights.  That proceeding remains pending.

Shortly before the appellant's release from custody, correctional authorities transferred him to a halfway house. The appellant finished serving his sentence on January 8, 2004, and left the halfway house at that juncture. He signed a written set of standard supervised release conditions that directed him, among other things, to eschew any contact with convicted felons and to obey the instructions of his probation officer.

Upon the appellant's release from the halfway house, the probation officer ordered him to stay away from both his minor daughter and his former girlfriend (with whom his daughter resided) unless he first obtained permission from the Probate Court. Probation officers subsequently repeated this instruction.

On March 26, 2004, the appellant, without leave from either the Probate Court or his probation officer, set out to contact his daughter. His odyssey began at an elementary school in Falmouth, Massachusetts. He became visibly agitated when he realized that Alisa did not attend that school. He then went to the school district's administrative offices, entered the building, and demanded access to his daughter. School officials informed him that he could not see any student unless his name was on the "emergency contact" list for that pupil. Because the appellant's name did not appear on Alisa's emergency contact list, the officials turned him away.

The appellant made yet a third attempt to find his daughter. Although he located the correct school, his quest failed once again; he spoke to the principal, who stated that the matter would have to be sorted out by the Probate Court.

School officials notified Megan McDonald of the appellant's meanderings through the Falmouth school system. She alerted the local constabulary and police officers were dispatched to Alisa's school. The appellant gave the officers circular explanations for his presence at the school.[1] He then grudgingly left the premises.

The appellant's actions had three immediate repercussions. First, Megan McDonald obtained a state court restraining order against the appellant. Second, the principal of Alisa's school filed a notice of trespass that forbade the appellant from setting foot on the institution's grounds. Last — but far from least — on March 31, 2004, the Probation Department moved to revoke the appellant's supervised release, claiming in relevant part that he had violated the order to stay away from his minor daughter.

---

[1]When the police arrived, the appellant was in the company of a woman who provided false identification information. Smith's probation officer eventually learned that the mystery woman was Karen McGauley, a convicted felon whom the appellant had met while in residence at the halfway house. Although the probation officer had told the appellant specifically to stay away from McGauley, the appellant nevertheless pursued a relationship with her.

On April 6, 2004, the district court issued an arrest warrant. Eight days later, the appellant called his probation officer to discuss the warrant. Contrary to the officer's importuning, the appellant did not self-surrender.

While still at large, the appellant married Karen McGauley. See supra note 1. The wedding took place on April 22, 2004. Less than three weeks later, federal marshals arrested the appellant at McGauley's family home in Yarmouthport.

At an ensuing evidentiary hearing, a magistrate judge found as a fact that the appellant had sojourned to the Falmouth schools for the express purpose of meeting with his daughter. This finding is not seriously controverted and, in all events, is supported by substantial evidence.

Before the district court, the appellant admitted to four supervised release violations; three involved frustrating instructions and inquiries of the probation officer and the fourth involved associating with a convicted felon. The court sentenced him to 318 days of additional incarceration and a new supervised release term. It inserted as a special condition of supervised release a direction that the appellant stay away from his minor daughter unless and until the Probate Court ordered otherwise. This timely appeal followed.

In this venue, the appellant asseverates that this special condition is illegal for two reasons: (i) it deprives him

of his fundamental right to associate with a close family member (his minor daughter) and (ii) it is not reasonably related to the permissible goals of his supervised release. We review the imposition of a condition of supervised release for abuse of discretion. United States v. Prochner, 417 F.3d 54, 62 (1st Cir. 2005). With that deferential standard of review in mind, we examine each of the appellant's asseverations.

The appellant's flagship claim is that the contested supervised release condition denies him his fundamental right to associate with a close family member and, thus, impinges upon his constitutionally prescribed freedom of intimate association. See Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18 (1984) (discussing a person's right "to enter into and maintain certain intimate human relationships" and the constitutional protection afforded to that right "against undue intrusion by the State"). We readily accept the appellant's tripartite premise that the father-daughter relationship is a close one, see Lehr v. Robertson, 463 U.S. 248, 256 (1983); that it is constitutionally protected, see Quilloin v. Walcott, 434 U.S. 246, 255 (1978); and that the court-imposed special release condition impinges upon it. We disagree, however, with the appellant's conclusion that, given these facts, his immutable right to see his child trumps the special release condition.

It is beyond hope of contradiction that those who are convicted of crimes against society lose a measure of constitutional protection.  See, e.g., Griffin v. Wisconsin, 483 U.S. 868, 874 (1987).  As a result, a sentencing court can infringe upon a convicted felon's liberty in various ways, such as by ordering incarceration or by imposing conditions of supervised release.  The fact that many conditions of supervised release limit a convicted felon's liberty does not render them invalid.  See United States v. Brown, 235 F.3d 2, 7 (1st Cir. 2000).  "The hallmark that separates impermissible conditions from permissible ones is whether, on a given set of facts, a particular restriction is clearly unnecessary."  Id.  This dividing line is no less appropriate when the parent-child relationship hangs in the balance.  Cf. United States v. Myers, 426 F.3d 117, 125 (2d Cir. 2005) ("The constitutional privileges attached to the parent-child relationship . . . are hardly absolute.").

Accordingly, we reject the appellant's argument that the challenged supervised release condition should be invalidated simply because it intrudes upon a constitutionally protected right.[2]  The mere existence of a biological link does not override all other considerations.  See Lehr, 463 U.S. at 261.

---

[2]This holding renders academic the government's suggestion that the appellant forfeited his constitutional claim by failing to raise it squarely in the court below.

This brings us to the appellant's "relatedness" contention. In mounting this aspect of his argument, the appellant emphasizes the absence of any direct connection between his minor daughter and the offenses of conviction. Yet the critical test is not whether such an offense-specific nexus exists but, rather, "whether the challenged condition is sufficiently related to one or more of the permissible goals of supervised release." Brown, 235 F.3d at 6.

Relatedness must be evaluated against a statutory backdrop. Congress has authorized courts to implement a wide variety of discretionary supervised release conditions as long as they are "reasonably related to" the goals of supervised release and "involve[] no greater deprivation of liberty than is reasonably necessary for [those] purposes." 18 U.S.C. § 3583(d)(1)-(2);[3] see USSG §5D1.3(b). This framework allows a court to order, as a special condition of supervised release, that the defendant "refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons." 18 U.S.C. § 3563(b)(6). The challenged condition fits within this taxonomy. We turn, then, to whether "the nature and circumstances of the offense and the history and characteristics of the defendant," id.

---

[3]A discretionary condition of supervised release also should be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(3). Neither party suggests that any such policy statements are germane to the condition challenged here.

§ 3553(a)(1), the need "to afford adequate deterrence to criminal conduct," id. § 3553(a)(2)(B), and the objective of "protect[ing] the public from further crimes of the defendant," id. § 3553(a)(2)(C), justified the condition's imposition in this instance.

As said, the appellant takes a narrow, offense-specific view of relatedness. In his estimation, the special condition constitutes an abuse of discretion because it does not advance any of the goals of supervised release or, at the very least, involves a greater deprivation of liberty than is needed to achieve those goals. This contention pales, however, in light of the appellant's actions. We explain briefly.

Here, the challenged condition serves the laudable goal of protecting public safety. When the appellant left the halfway house, he was told to refrain from contact with his minor daughter. The appellant did not abide by this directive. What is more, the egregious manner in which he transgressed it set off warning bells.[4] His actions were sufficiently unsettling that they produced both a state court restraining order and a trespass notice. Under these circumstances, the district court reasonably could have believed — as it apparently did — that both Alisa and

---

[4]The appellant's proclivity for disrespectful behavior toward his family members was also evidenced by his subsequent behavior. After being denied access to his daughter at her elementary school, he sent compromising photographs of Megan McDonald to Alisa's school principal and to the Barnstable Probate Court.

Megan McDonald, as members of the public, needed to be protected from the appellant. The special release condition plainly served that permissible purpose. See Wilkinson v. Russell, 182 F.3d 89, 104 (2d Cir. 1999) (emphasizing the strong governmental interest in safeguarding minors, particularly when a child is in need of protection against a parent's actions).

If more were needed — and we doubt that it is — the appellant unquestionably violated an order that he refrain from associating with convicted felons by consorting with McGauley (a convicted felon) and eventually marrying her. Alisa's custodial parent, Megan McDonald, likewise was a convicted felon — indeed, she was the appellant's codefendant — and, given the likelihood of coming into contact with her in the course of any attempt to contact Alisa, it was within the district court's proper province to direct the appellant to stay away from the child. Cf. United States v. Bolinger, 940 F.2d 478, 480 (9th Cir. 1991) ("Probation conditions may seek to prevent reversion into a former crime-inducing lifestyle by barring contact with old haunts and associates, even though the activities may be legal.").

The appellant's fallback position — that the special condition of supervised release deprives him of more liberty than is reasonably necessary — lacks force. After all, the condition was not absolute. Family matters are best adjudicated in state domestic relations courts, and the district judge sensibly

-10-

constructed this condition to allow for its alteration by the Probate Court (a court of competent jurisdiction that the appellant already had petitioned for a grant of visitation rights). So viewed, the challenged condition does not go too far. See, e.g., United States v. Crume, 422 F.3d 728, 734 (8th Cir. 2005) (allowing condition barring defendant who possessed child pornography from seeing his child without the permission of parole officer); see also Myers, 426 F.3d at 127 (noting, in dictum, that condition prohibiting appellant from spending time alone with his son absent prior authorization would be acceptable if its goal was to "protect other children").

We need go no further. For the reasons elucidated above, we conclude that the district court did not abuse its discretion in promulgating the challenged condition of supervised release.

**Affirmed**.