# United States Court of Appeals
## For the First Circuit

No. 15-1045

UNITED STATES OF AMERICA,

Appellee,

v.

NICHOLAS WEBSTER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Barron, Circuit Judges.

Sarah A. Churchill and Nichols & Webb, P.A., on brief for
appellant.
Renée M. Bunker, Assistant United States Attorney, and
Thomas E. Delahanty II, United States Attorney, on brief for
appellee.

April 13, 2016

**TORRUELLA**, **Circuit Judge**.  This case concerns whether the district court abused its discretion when it imposed sex offender treatment on Nicholas Webster ("Webster") as a condition of supervised release.  Webster was convicted of attempted gross sexual assault and solicitation of a child by computer in Maine state court in 2007.  He was subsequently convicted for failing to register as a sex offender in Maine and New Hampshire state courts.

In 2012, Webster pleaded guilty to charges in the United States District Court for the District of New Hampshire stemming from his failure to register as a sex offender, as required by the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a), after moving from Maine to New Hampshire.

In 2014, Webster pleaded guilty in the United States District Court for the District of Maine to violating the conditions of supervised release that were imposed on him due to his SORNA violation.  Namely, Webster pleaded guilty to: (1) failing to stop for a police officer; (2) driving to endanger; (3) criminal mischief; (4) operating under the influence of alcohol; (5) driving without a license; and (6) consumption of an unknown quantity of alcoholic beverages.  The district court sentenced him to eleven months of incarceration and a supervised release term of 120 months, subject to a number of conditions.  These included

-2-

that Webster participate in sex offender treatment and undergo random periodic polygraph exams if required by the therapeutic program.  He appeals the sex offender and polygraph conditions imposed.

**I.**

In 2007, Webster was convicted of attempted gross sexual assault and solicitation of a child by computer in Cumberland County Superior Court in Maine.  Specifically, he was found guilty of arranging a meeting with a thirteen-year-old female in order to engage in sexual acts.[1]  During the course of the conversation between Webster and the individual posing as an underage female, Webster provided sexually explicit descriptions of his own anatomy, and informed the minor that he could "teach her how to please a man."  Police arrested Webster as he drove to meet the underage female at a prearranged meeting place.

Webster was sentenced to a term of five years imprisonment, with all but fifteen months suspended, to be followed by a probation term of three years.  Webster was also required to register as a sex offender.

---

[1]  The record reveals that Webster was in fact communicating with an individual working for Perverted Justice, an organization devoted to catching sex offenders online, who was posing as a thirteen-year-old child.

After completing his incarceration, Webster's probation was revoked on two separate occasions in Maine state court.[2] Webster's second probation revocation was due in part to his failure to register as a sex offender with the Maine Sex Offender Registry. Additionally, Webster was convicted of failing to register as a sex offender in the state of New Hampshire. In addition to his state convictions for failing to register as a sex offender, Webster has a 1998 state conviction for Reckless Conduct, which involved domestic violence, various motor vehicle offenses, and multiple counts of Burglary and Theft by Unauthorized Taking.

On December 12, 2012, a federal grand jury returned a one-count indictment against Webster, charging him with traveling in interstate commerce while knowingly failing to register as a sex offender in the state of New Hampshire, in violation of 18 U.S.C. § 2250(a). On June 25, 2013, Webster pleaded guilty to one count of failure to register as a sex offender, and was sentenced

---

[2] Three parole revocation petitions were filed in Maine state court. However, his second and third revocation petitions were adjudicated together. Webster's second revocation petition alleged that he failed to notify the Maine Sex Offender Registry of a change of address, which led to him being charged with a new offense. The second revocation petition also alleged that Webster changed his address without permission, failed to report as directed, and failed to undergo sex offender treatment. His third revocation petition alleged that Webster committed theft, failed to identify himself as a probationer to law enforcement, provided a false name to a police officer, and failed to refrain from the use or possession of marijuana.

to 18 months imprisonment and 15 years of supervised release. The district court recommended that he participate in sex offender treatment during his incarceration, but did not mandate sex offender treatment as a supervised release condition.

On March 7, 2014, Webster was released from custody and began serving his term of supervised release. On April 2, 2014, the District of Maine assumed supervision of Webster's terms of release.[3]

On April 5, 2014, a Maine State Police trooper pulled Webster over for travelling at seventy-four miles per hour in a fifty-five mile per hour zone. The trooper stepped out of his cruiser and, as he approached the rear side door of the vehicle, Webster drove away. Following a brief chase, the trooper found the vehicle with two female passengers inside, who informed the officer that the driver had absconded on foot. Another officer subsequently apprehended Webster who "smelled of alcohol" and had "glassy and bloodshot" eyes. Although one of the passengers attested to Webster's alcohol consumption, Webster did not consent to a breathalyzer test.

Thereafter, on April 7, 2014, the United States Probation Office filed a Petition for Warrant or Summons for

---

[3] Previously, the United States District Court for the District of New Hampshire had jurisdiction over Webster's supervision.

Offender Under Supervision alleging six parole violations. Specifically, the petition adduced that Webster violated the following conditions of supervision: (1) eluding an officer;[4] (2) driving to endanger; (3) criminal mischief; (4) operating a vehicle under the influence of alcohol; (5) driving without a license; and (6) consuming an unknown quantity of alcoholic beverages.

The district court conducted a revocation hearing on December 19, 2014. At the start of the hearing, Webster admitted that he committed all six violations. Probation Officer Kristin Cook[5] testified that sex offender treatment is generally not imposed as a release condition in the District of New Hampshire. However, "[e]very case that has a prior sex offense or is convicted of failure to register" in the District of Maine is ordered to undergo sex offender treatment as a condition of release. The treatment includes a psychosexual assessment, as well as a polygraph exam. Ms. Cook added that, without the polygraph, probation officers would be forced to take sex offenders on their word.

---

[4] The charge for eluding an officer was later re-filed as failure to stop for a police officer.

[5] The transcript of the proceedings incorrectly refers to the Probation officer as "Crystal Cook," however, her name is Kristin Cook.

-6-

Webster retained Dr. Peter Donnelly ("Dr. Donnelly"),[6] a psychologist, to perform competency and criminal responsibility evaluations, as well as a psychosexual risk assessment. Dr. Donnelly diagnosed Webster with schizoaffective disorder, a serious mental illness. Further, Dr. Donnelly testified that Webster's responses to his questions failed to correlate to those of "known child molesters or known rapists." In Dr. Donnelly's view, Webster's sexual deviance was subsequent to Webster's primary issues of mental health and substance abuse. However, Dr. Donnelly noted that Webster can "fall into criminal problems" including sexual offenses when he is engaging in substance abuse or not properly managing his mental illness. Dr. Donnelly's written report did not address whether sex offender treatment would be beneficial. Nonetheless, Dr. Donnelly conceded that Webster could benefit from sex offender treatment in his testimony.

---

[6] We note that Dr. Donnelly also evaluated Webster in 2007 in relation to the sex offense charges brought against him in Maine state court. In his 2007 report, Dr. Donnelly noted that Webster acknowledged committing a sex offense and that Webster endorsed the position that his sex offense "happened because [he] knew the person already had sexual experience and they wanted it" and that his "sexual offense happened because of stress in [his] life." Webster also admitted to "some sex play between [himself] and the person who accused [him] but the truth is the person invited it and wanted it." As part of his recommendations, Dr. Donnelly noted that therapeutic efforts will need to be tailored to ensure that Webster achieves greater self-awareness "of how he could have made himself vulnerable to committing a sex-related crime."

Although Dr. Donnelly initially questioned the effectiveness of polygraph exams, he ultimately acknowledged their helpfulness.

During his allocution, Webster sought to explain his previous transgressions. He told the court that he was undergoing a "dark period" in December of 2006 due to his divorce and engaging in alcohol abuse. He admitted to inappropriate sexual behavior in his past, but claimed that it did not involve minors. According to Webster, the person he spoke with online in 2007 did not have an age profile and he did not "remember all of the circumstances" regarding what transpired. Webster also denied that he was driving to meet the purported minor with whom he was chatting online. Instead, he was driving to meet adults whom he also had met online.

Webster also sought to explain why he failed to register with the Maine sexual offender registry. In his view, he did not blatantly refuse to register or attend treatment, but did so as a result of his circumstances. He told the court that he was living with his father at the time and the police told him to leave after his father assaulted him. Instead of going home, Webster "ended up [. . .] with friends that were not right."

Webster also told the court that he did not maliciously break the law during his most recent supervised release violation because he thought he had a valid driver's license. Finally,

Webster expressed that he felt that sex offender treatment was "counterproductive," because in his view his principal issues are substance abuse and depression.

After listening to witness testimony and Webster's allocution, the district court sentenced Webster to eleven months imprisonment and a 120-month period of supervised release. In addition, the district court ordered Webster to undergo sex offender treatment and periodic polygraph examinations, if required by the therapeutic program, as conditions of his supervised release.

The district court ably explained that sex offender treatment and polygraph examinations were necessary in light of: (1) Webster's self-medication and mental health issues; (2) the court's understanding that Webster had not been forthright; (3) Webster's statement to Dr. Donnelly that he thought he was chatting with a sixteen- or seventeen-year-old girl and "was doing a quick two-step with regard to when he was arrested and how he was arrested;"(4) the fact that Webster's sex offense conviction is at odds with Webster's statement to Dr. Donnelly that he never had sexual interest in a child or engaged in deviant sexual behavior; (5) Dr. Donnelly's statement that sex offender treatment could be beneficial; (6) sex offender treatment had been previously ordered by the Maine state court; and (7) the court's concern that

Webster's refusal to register as a sex offender could indicate that Webster sought to deny or rationalize his past sexual misconduct.

While the court noted that the scientific community is divided on the usefulness of polygraphs, the court found that its use is appropriate where a sex offender lacks candor. Given Webster's less than forthcoming allocution, the district court reasoned that the polygraph component was necessary.

## II.

We review challenges to conditions of supervised release for abuse of discretion. United States v. Morales-Cruz, 712 F.3d 71, 72 (1st Cir. 2013).

"There are two basic kinds of supervised release conditions. The first kind are mandatory conditions. By operation of statute, mandatory conditions are automatically imposed in every case in which a defendant receives supervised release as part of his sentence." United States v. Medina, 779 F.3d 55, 60 (1st Cir. 2015) (citing 18 U.S.C. § 3583(d)). The second kind are those special conditions imposed at the discretion of the court. Id.

District courts enjoy "significant discretion to impose special conditions of supervised release." Id. However, district

courts may impose a special condition only if the court determines

that the condition:

> (1) is reasonably related to the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in [18 U.S.C. §] 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(a).

18 U.S.C. § 3583(d).

Section 3553(a)(1) requires that the district court take account of "the nature and circumstances of the offense and the history and characteristics of the defendant." District courts must also take account of the need "to afford adequate deterrence to criminal conduct," id. § 3553(a)(2)(B), "to protect the public from further crimes of the defendant," id. § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational treatment, medical care, or other correctional treatment in the most effective manner," id. § 3553(a)(2)(D); see also Medina, 779 F.3d at 60. Thus, district courts may impose a special condition only if the condition will further at least one of the goals of supervisory release, which include: (1) the need to protect the community; (2) deterrence; and (3) the effective educational, vocational, medical, or other correctional treatment of the

-11-

defendant.  United States v. York, 357 F.3d 14, 20 (1st Cir. 2004) (citing U.S.S.G. § 5D1.3(b)(1)); see also Medina, 779 F.3d at 60-61.

"The critical test is whether the condition is reasonably related to one or more of the goals of supervised release."  Morales-Cruz, 712 F.3d at 74 (citing York, 357 F.3d at 20).  Importantly, sex offender treatment may be imposed in a case in which the underlying crime is not a sex offense.  York, 357 F.3d at 19-20.

Webster contends that the district court abused its discretion by requiring that he participate in sex offender counseling and submit to polygraph testing as part of his supervised release.[7]  More specifically, Webster argues that the court imposed sex offender treatment on him as a matter of policy even though this condition is not reasonably related to the conduct that triggered his violation of supervised release.  Secondly, Webster emphasizes that because his conviction for sexually

_____

[7]  Arguably, Webster waived his challenge to the polygraph testing condition by failing to develop his argument in his brief.  To the extent that he is alleging that the polygraph condition is unreasonable, we discuss his objections to the polygraph testing condition in tandem with his objections to the imposed sex offender treatment.  Nonetheless, we note that the district court tailored the polygraph condition to ensure the protection of Webster's Fifth Amendment rights, as well as any concern that violation proceedings may arise solely from Webster's failure to pass a polygraph exam. See York, 357 F.3d at 23-25.

deviant behavior took place in 2007, it is too remote in time to support the imposition of sex offender treatment or polygraph testing.[8]  Thus, Webster contends that the imposed conditions are not tailored to his particular history and characteristics.

In Morales-Cruz, the defendant violated the conditions of his supervised release by failing to register as a sex offender as required by SORNA.  The district court sentenced the defendant to 48 months of imprisonment and a ten-year term of supervised release, which included participation in sex offender treatment and/or mental health treatment programs.  The majority upheld the imposition of sex offender treatment as a condition of supervised release even though the underlying sex offense was sixteen years old.  According to the majority, the defendant's multiple convictions for failure to register as a sex offender in three different jurisdictions warranted the imposition of sex offender treatment because it permitted a reasonable inference that the defendant "presented a recidivism risk and warranted deterrent

_____

[8]  Webster cites the dissenting opinion in Morales-Cruz to support his argument that when the sexually offending behavior is temporally removed from the events that trigger the sentencing, a strong nexus between the need for sex offender treatment and the defendant's circumstances must be shown. 712 F.3d at 77 (Torruella, J., dissenting) (citing United States v. Dougan, 684 F.3d 1030, 1036 (10th Cir. 2012)).  Even under the dissent's reasoning, however, Webster's argument fails because the district court provided a sufficient nexus between Webster's characteristics and the need for sex offender treatment.

punishment." Id. at 75. The majority also noted that the defendant had a recent conviction for battery on the woman with whom he lived.[9] Id. at 72.

Unlike the defendant in Morales-Cruz, Webster did not violate his supervised release conditions because of a failure to

---

[9] As part of its analysis, the majority distinguished the defendant in Morales-Cruz from cases in our sister circuits in which supervised release conditions were reversed because the conditions were premised on behavior that was too remote to justify sex offender or mental health conditions. See United States v. Sharp, 469 F. App'x 523 (9th Cir. 2012)(sex offender conditions reversed where the sex offense was more than a decade old, the defendant was convicted of being a felon in possession of a firearm, no suggestion of prior sex offender registration convictions, and the district court failed to provide justification for the sex offender condition); United States v. Carter, 463 F.3d 526 (6th Cir. 2006)(sex offender conditions reversed where the defendant was convicted of being a felon in possession of a firearm, the defendant's prior sex offense was 17 years old); United States v. Scott, 270 F.3d 632 (8th Cir. 2001) (sex offender conditions reversed where the defendant was convicted of armed robbery and the sex offense was 15 years removed); United States v. Kent, 209 F.3d 1073 (8th Cir. 2000) (reversing mental health conditions because they were unrelated to the mail fraud conviction and there was no evidence in the record to suggest that mental health counseling would further the goals of deterrence or public protection); Dougan, 684 F.3d 1030 (reversing imposed sex offender conditions because previous convictions for sexual battery took place 17 years prior); United States v. Rogers, 468 F. App'x 359 (4th Cir. 2012) (per curiam) (reversing sex offender conditions because the sex offense was over twenty years old and there was no suggestion that the defendant had chronically failed to comply with sex offender registration requirements).

The majority emphasized that these cases were distinguishable because they did not involve a defendant with a recent conviction for domestic violence. Moreover, in four of the cases the challenged conditions "bore no relationship to the offense of conviction and the defendant's recent criminal history provided no

register under SORNA. Nor was Webster's supervised release violation a sexual offense. Nonetheless, we find that the district court sufficiently articulated the need for sex offender treatment and polygraph testing in this case. As mentioned earlier, the district court provided a detailed accounting as to why the imposed conditions were appropriate.

In light of Dr. Donnelly's testimony and Webster's allocution, we find that the record supports that the sex offender treatment and polygraph conditions are in fact tailored to the nature and circumstances of Webster's sex offense and Webster's particular characteristics. Webster's refusal to accept responsibility for his sex offense, lack of candor towards the court, and continued self-medication pose a real risk of recidivism. See United States v. Roy, 438 F.3d 140, 143 (1st Cir. 2006) (describing statement by a treatment counselor that with sex offenders, dishonesty is commonly a risk factor for recidivism). We have previously highlighted that sex offender treatment has been linked to reduced recidivism. See United States v. Mercado, 777 F.3d 532, 537 (1st Cir. 2015) (citing Morales-Cruz, 712 F.3d at 75; York, 357 F.3d at 21). Further, Dr. Donnelly's testimony linked Webster's mental illness and substance abuse to his sexual

basis for the conditions." Morales-Cruz, 712 F.3d at 75.

-15-

deviance. Thus, we conclude that the imposed conditions are reasonably related to Webster's offense and his characteristics. We also find that the imposed conditions are sufficiently related to the supervised release goals of rehabilitation and the need to protect the community.

Webster's argument that his 2007 sex offense is too remote to be reasonably related to the imposition of sex offender treatment also fails. In Morales-Cruz, the majority affirmed the imposition of sex offender treatment when the underlying sex offense was sixteen years old. 712 F.3d at 72. We are well aware that "our sister circuits continue to take a dim view of equivalent sentencing conditions based on temporally remote sex offense convictions where there has been no subsequent similar conduct." United States v. Del Valle-Cruz, 785 F.3d 48, 59 (1st Cir. 2015). The imposition of sex offender conditions is troubling when the underlying sex offense conviction is temporally remote. However, in this case, we find that the district court properly articulated the need for sex offender treatment in light of Webster's personal characteristics. As has been repeatedly mentioned throughout this opinion, the court found that Webster's lack of candor, denials of responsibility, continued self-medication, and the testimony from his own retained therapist necessitated the imposed conditions. Thus, even though Webster's underlying sex offense conviction

dates back to 2007, his history and characteristics support the district court's imposed conditions.  Further, the record amply supports that Webster will likely benefit from sex offender treatment as part of his rehabilitation.  Similarly, Webster's allocution indicates that his refusal to accept responsibility for his conduct and his continuing self-medication present a danger to the community.

Because we find that the sex offender treatment and polygraph testing conditions were warranted by Webster's individual characteristics and that such conditions were also necessary to achieve the goals of supervised release, we conclude that affirmance is appropriate in this case.

### III.

Accordingly, we affirm the district court's imposition of sex offender treatment and polygraph examination.

**<u>Affirmed</u>**.