LYNCH, Circuit Judge, dissenting.
With great respect for my colleagues in the majority, I fear this opinion will make it more difficult for courts to impose conditions of supervised release meant to protect the families, and particularly the minor daughters, of convicted sex offenders (who here had preyed on a minor female) and to monitor such offenders better. The district court was clearly worried that Cabrera would engage in illegal activities with minors while out on supervised release, and with good reason given the facts of this case. And while the majority says it wishes to protect the defendant's rights, it does so by ignoring the equal rights of his wife and children.
I agree that the length of the sentence must be affirmed but strongly disagree that the imposition of condition three is a "miscarriage of justice" under United States v. Teeter, 257 F.3d 14 (1st Cir. 2001), and so is not covered by the waiver of appeal.
The majority, in my view, departs from binding circuit law in every step of its miscarriage analysis. The majority then relies on waived and meritless arguments to find that the imposition of condition three was plain error.[20]
A. Miscarriage of Justice
In my view, the majority opinion is barred by circuit precedent from concluding that a miscarriage of justice is caused by condition three.[21] A finding of miscarriage *36 of justice "is meant only for 'egregious cases' and is to be applied 'sparingly and without undue generosity.' " United States v. Santiago, 769 F.3d 1, 8 (1st Cir. 2014) (quoting Sotirion v. United States, 617 F.3d 27, 36 (1st Cir. 2010) ). There is no egregious error in condition three. The majority says that the miscarriage of justice standard is met because of the combination of the defendant's significant liberty interest and the lack of a specific justification for the condition from the district court. I disagree on both points.
As to the first, the majority focuses on Cabrera's parental rights to the detriment of the rights of his daughter (and son), and of his common law wife, who may want to use Probation to express their views as to any further contact between the defendant and his children when he is released after nine years. The majority and United States v. Del Valle-Cruz, 785 F.3d 48 (1st Cir. 2015), cite Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), for the proposition that "the relationship between parent and child is constitutionally protected." Id. at 255, 98 S.Ct. 549. That right does not accrue only to fathers; mothers and children have rights in that relationship as well. Id. Because of the rights of the other family members and the grave risk that Cabrera presents, the involvement of a probation officer, who can ask these other family members their views as to whether such contact is warranted at the time, can hardly be a miscarriage of justice. The majority concedes that the well-being of Cabrera's wife and children is a relevant consideration when evaluating condition three, but gives that factor insufficient weight. Given the details and severity of Cabrera's conduct as found by the district court, the necessity of condition three for the well-being of Cabrera's children is clear.
We do not need to even infer the district court's reasons for imposing condition three, as it made those concerns explicit. The court was concerned about the risk of illegal actions by the defendant while on supervised release and explicitly raised the subject. The court warned Cabrera that he must realize that he could not "engage in the type of actions in which he engaged" and could not take advantage of people with learning disabilities.
And in response to an alleged threat from him against the victim and her family, the district court said the following:
I will not be considering the issue of the threat [for the purposes of sentencing], though I warn this defendant that if anything happens to the family of this minor or to the minor during the time of, let's say your supervised release or any point afterwards, from the police perspective you will be the first suspect.
(emphasis added).
The district court later said:
And the period of supervised release will be a significant one. In essence it will get to a point where if you do it right, if you restructure your life, if you don't give the Probation Officer any reason to believe that you are engaging in any similar action or in any other type of illegal action they will place you in minimal supervision. But if you set a different course in life, then they will be able to act.[22]
*37 (emphasis added). So the district court wanted Probation involved to monitor the defendant on supervised release and said so.
Even if the district court had not been explicit, the reason for condition three is easy to infer. United States v. Vélez-Luciano, 814 F.3d 553, 559 (1st Cir. 2016) (citation omitted). Condition three is justified by the severity, deceitfulness, and sophistication of Cabrera's offense, as found by the district court.[23] Cabrera took advantage of the victim Jane Doe's vulnerabilities in order to use her for his sexual purposes. He knew she was receiving psychological treatment, and she was enrolled in a special education program due to learning disabilities. Cabrera first met the victim when she was twelve. He obviously knew that the victim was just sixteen when his grooming efforts succeeded.
Cabrera taught the victim how to download the application she used to send him images of herself and how to use a mobile phone camera self-timer so that she could "take pictures touching herself or in certain positions." Cabrera called the victim "everyday requesting pictures," and convinced her to send him "58-59 images depicting explicit sexual conduct as requested by him." He showed these images to his coworkers, and continued this behavior even after one of his coworkers warned him that he could get into trouble.
Throughout his misconduct, Cabrera "transferred images via Bluetooth to his prepaid cell phone," which he had at his sister's house so that he could keep the images and reduce the risk of detection. He regularly deleted the texting application he used to communicate with the victim to make sure that the images were removed from his primary cell phone, and so were hidden from his wife.
In light of these facts, the Presentence Investigation Report ("PSR") recommended, and the district court adopted, a host of conditions limiting Cabrera's contact with minors subject to Probation's approval. Cabrera is forbidden from "participat[ing] in any volunteer activity ... that would bring him in close contact with *38 a child unless" he gets prior approval from Probation; "work[ing] with children under the age of 18 or hold[ing] a job that gives him authority over potential victims" and obtaining employment without Probation's approval; and "hav[ing] ... personal contact with ... minors under the age of 18 ... unless approved in advance by the Probation Officer" with an exception for incidental contact and contact with his relatives. The majority agrees that these conditions are not miscarriages of justice, but wants to create a special rule allowing Cabrera to reside with his children without Probation's involvement. Such a rule is unjustified given the evidence in the record, the findings of the district court, and the reasons I have stated.
Cabrera's daughter will turn sixteen -- Doe's age at the time of Cabrera's offense -- during Cabrera's term of supervised release. Cabrera's predatory behavior toward the victim in this case and his ability to hide his behavior from his wife make condition three a sensible means of protecting Cabrera's children, especially his daughter. That protection is not a miscarriage of justice. See Vélez-Luciano, 814 F.3d at 563.
In response to all of this, the majority turns to Del Valle-Cruz to argue that more of an explanation was required before condition three was imposed. But the defendant in that case was less of a danger to his children than Cabrera is. Del Valle-Cruz had committed sexual misconduct eighteen years before his failure-to-register conviction -- which is not a sex offense -- and "ha[d] taken affirmative steps to turn his life around" apart from that. Del Valle-Cruz, 785 F.3d at 60-61. There is no eighteen-year period of good behavior here. Cabrera is being sentenced for a serious sex offense, the disturbing details of which warrant condition three.
Del Valle-Cruz is also unhelpful to the majority because it is a SORNA failure-to-register case. In order to determine whether the associational restrictions were justified in SORNA failure-to-register cases, this court searches for recent sexual misconduct and violent behavior because "[s]uch restrictions operate to protect the public, especially children, from the defendant," United States v. Pabon, 819 F.3d 26, 31 (1st Cir. 2016), and past sex offenses demonstrate the need for such protection. Because failure to register as a sex offender is not itself a sex offense, courts look for sexual misconduct in the recent past in order to determine whether the defendant presents a danger to his children. See id.; Del Valle-Cruz, 785 F.3d at 60. Such an inquiry is unnecessary where, as here, the nature and details of a defendant's offense demonstrate the need for an associational restriction.[24] See Pabon, 819 F.3d at 31.
Condition three does not even bar Cabrera from residing or being alone with his children. It merely requires that Cabrera get approval from Probation beforehand. Probation would make that determination based on several factors, including "the defendant's placement in the sex offender risk assessment tools" and "the recommendation of the psychosexual treatment provider." Access to biological parents may be granted "once a third party risk assessment has been conducted with the custodial parent or legal guardian." We upheld this type of condition in *39 United States v. Mercado, 777 F.3d 532 (1st Cir. 2015), reasoning that the conditions were "sufficiently circumscribed" because the defendant was still permitted to contact his minor children with pre-approval from his probation officer. Id. at 539. As in Mercado, Cabrera would have legal recourse if Probation kept him from his children without good reason.[25] Id.
B. The Correct Standard of Appellate Review Precludes the Majority's Analysis
Cabrera waived plain error review by not making any effort in his principal brief to explain why condition three failed under even that standard. See Pabon, 819 F.3d at 33. In Pabon, the court found that a plain error challenge failed because "[a]lthough [the defendant] argues that the district court has erred in numerous ways, he does not anywhere cite the four-factor test or attempt to establish its latter three factors." Id. at 34.
Cabrera has similar failings. His principal brief did not cite plain error cases, it did not couch its argument in the plain error terminology, and it did not even reference the plain error standard. Cabrera "le[ft] the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). He waived his plain error argument by doing so.
The majority attempts to avoid the waiver by arguing that the difference between the miscarriage of justice standard and the plain error standard is blurry, and so it does not make sense find that the plain error argument has been waived where a party has made a miscarriage of justice argument. The fact that information relevant to the four prongs of the plain error standard was present in the principal brief does not preserve an unmade plain error argument.
The court's holding here adds to whatever confusion already existed by making a broad pronouncement about the similarity between two standards. This conclusion is particularly inappropriate because there was no briefing on the similarities and differences between the two standards.[26]
The majority's analysis of the merits of the plain error challenge is also, in my view, incorrect. The second, third, and fourth prongs of plain error review are clearly absent for the reasons already explained and under our precedent. When faced with a similar condition, this court found that "at least two courts of appeals have held that a prior sex offense against a minor is sufficient to justify similar associational conditions, even where the record did not include particularized findings."
*40 Pabon, 819 F.3d at 34. From this, the court in Pabon reasoned that "[w]here, as here, there is no controlling authority or clearly established legal norm, and other circuits have differing views, we think that the issue is, at best, one of reasonable dispute. Thus there is no clear or obvious error." Id. There is still no controlling authority on this issue, so there is no plain error.
The majority attempts to distinguish Pabon, but is unsuccessful. The majority argues that "Cabrera's crime did not involve a girl below the applicable age of consent and did not take place at a domestic partner's home," and "any physical relationship he had with Doe would not itself have been unlawful." As I explained above, there is ample evidence in the record showing that Cabrera presents a danger to his children.[27] The case for the restriction is even stronger here because, unlike Pabon, Cabrera is being sentenced for a sex offense.

There is a question whether the district court in fact intended condition three to apply to contact with Cabrera's children. We often remand for clarification and do not need to find a miscarriage of justice to reach that result. See, e.g., United States v. Cunningham, 201 F.3d 20, 26 (1st Cir. 2000). The majority did not take the option of remanding for clarification as to condition three without deciding the miscarriage of justice issue. For the purposes of this dissent, I will read condition three as the majority does.

I agree with the majority that the waiver covers the term and conditions of supervised release, but I do not join its suggestion that a waiver of appeal may not extend to a term of supervised release where that term is left to the court's discretion by the plea agreement. That argument is foreclosed by our case law. United States v. Vélez-Luciano, 814 F.3d 553, 558 (1st Cir. 2016) ("We have repeatedly 'ha[d] no trouble concluding that the word "sentence" in [a plea agreement's] waiver encompasse[d] every component of the sentence, including the term of supervised release and its attendant conditions, thus bringing the instant action within the waiver's reach.' " (alterations in original) (quoting United States v. Santiago, 769 F.3d 1, 7 (1st Cir. 2014) )); United States v. Rojas, 780 F.3d 68, 69 (1st Cir. 2015). Our law is also clear that a waiver of appeal extends to conditions of supervised release even where a plea agreement does not specify a term of supervised release. See United States v. Rivera-López, 736 F.3d 633, 634, 636 (1st Cir. 2013) (applying a waiver to a condition of supervised release where there was no mandatory term of supervised release and supervised release was not part of the sentence recommendation); see also Santiago, 769 F.3d at 7. Cabrera has waived the right to appeal "the judgment and sentence," which, given the comprehensiveness of that phrase, is meant to include every component of the sentence imposed by the district court. See United States v. Brown, 235 F.3d 2, 4 (1st Cir. 2000).

The majority claims that "[t]he court did not reject out-of-hand" the more favorable inferences urged by defense counsel. But the district court never credited defense counsel's depiction of Cabrera's conduct. The district court never adopted defense counsel's argument that "this is not one of those people who pr[e]ys on young women for the purpose of committing sexual offenses." The district court also never agreed with defense counsel that "[t]his is just one of those cases of misjudgment of what the law is ...." Rather, the district court found that, even if Cabrera had somehow been unaware that his behavior was illegal, he was put on notice when one of his coworkers warned him. The district court's findings that Cabrera is a first-time offender, that he had been in a long-term relationship with the mother of his children, and that relatives and neighbors had submitted letters on his behalf do not undermine the rationale for condition three.

I quote from the district court's statement at sentencing:
The Court also takes into consideration the circumstances surrounding the offense and it seems that in terms of the commission of the offense there is no doubt one, that the defendant knew that the victim was a minor. Two, based on the admissions made by the defendant at the time of the interview, he had been in continuous communications with the minor since around the summer of 2012 and actually he also knew that she was receiving psychological therapy, though he didn't know the reason. And actually he admitted that he was the one that explained and instructed the minor how to download the "text now" application and how to communicate via text and how to up-load the images she was taking at his request. In addition to that it seems that, and based on the statement that is appear [sic] here, that Mr. Cabrera at different times showed the images to the coworkers. That is stated specifically at paragraph 17, and got my attention that even if he didn't know it was illegal at that point in time, the person that looked at it based on his statements, actually told him that he was getting into problems. This after he was showing those pictures at the workplace.

The majority argues that I am applying a "categorical approach" to determine that condition three was justified. That is inaccurate. I am not arguing that any sex offense is sufficient to justify any condition of supervised release limiting contact with a defendant's minor children. Rather, my point is that the severity and details of Cabrera's offense justify the imposition of condition three such that the imposition can hardly be a miscarriage of justice or plain error.

The majority asserts that we are departing from Del Valle-Cruz by taking note of the fact that condition three does not prohibit Cabrera outright from contacting his children. But Mercado, decided in February 2015, tells us that it is "important[ ]" whether a condition serves as an outright ban or merely "require[s] that his association with his children be pre-approved by the probation officer ...." 777 F.3d at 539. Del Valle-Cruz, decided in April 2015, did not overrule Mercado on this point, nor could it. It instead distinguished the case on the facts. See Del Valle-Cruz, 785 F.3d at 61.

The majority also argues that Pabon"did not address such claims in the context of an appellate waiver." That is true, but irrelevant. Once the majority reaches plain error review, the appellate waiver is already out of the picture, and we need to address the arguments for why the district court plainly erred. Here, Cabrera has not made a plain error argument and that should have ended this appeal.

The majority also states that Cabrera's situation is different because "unlike the defendant in Pabon -- who had 'violent inclinations' -- Cabrera's PSR depicts him as a stable and supportive father and domestic partner." (citation omitted). Cabrera may have been a supportive father to his two-year-old son, but he was arrested before the birth of his daughter so there can be no history as to the daughter. Similarly, the record does not say that Cabrera is without "violent inclinations." The PSR and testimony at sentencing indicate that, when confronted by Doe's brother about his behavior, Cabrera beat him with a blunt object. The victim's parents stated that the injuries to Doe's brother required hospitalization and two head surgeries. The district court did not determine who started the fight and said that, "even in a fight there are times in which a person has to put a stop to the amount of damage that he is able to cause. I find that troublesome." Contrary to the majority's view, the PSR and district court's findings about Cabrera's deceitful behavior toward the mother of his children does not square with him being a "supportive ... domestic partner." Pressuring a sixteen-year-old with a learning disability and emotional issues to send him naked pictures is not a "stable" thing to do.